**Edmond Albert STAFFORD, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 1085–88.

Court of Criminal Appeals of Texas, En Banc.

July 3, 1991.

2. SUPREME COURT OF TEXAS, RULES GOVERNING THE STATE BAR OF TEXAS art. X, §§ 8(2), 23(A) (1988).

counsel. *Stafford v. State,* 758 S.W.2d 663 (Tex.App.—Houston [1st Dist.] 1988). We granted the State's petition for discretionary review to examine the Court of Appeals' holding. We now reverse.

The Court of Appeals found that appellant's trial counsel was ineffective for his failure to object to testimony concerning another drug transaction conclusively shown not to involve appellant but introduced by the State before the jury in the guilt/innocence phase of trial. 758 S.W.2d at 670–671. The court also found that trial counsel provided ineffective assistance when he, in the court's opinion, admitted appellant's guilt in his final arguments. *Id.* at 762–673. Finally, the Court of Appeals found that appellate counsel was deficient for her failure to allege trial counsel's ineffectiveness as a point of error on appeal. *Id.* at 674. The State contests these findings, insisting that trial counsel's failure to object to the extraneous drug transaction was sound trial strategy, that the Court of Appeals has taken trial counsel's argument out of context to conclude improperly that such was an admission of guilt and that appellate counsel cannot be faulted for not bringing frivolous claims to the Court of Appeals' attention. We agree with the State.

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court held that to advance successfully an ineffective assistance of counsel claim:

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the

Mary B. Hennessy, on appeal only, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Kathlyn Giannaula and Bruce Halling, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

McCORMICK, Presiding Judge.

Appellant, Edmond Albert Stafford, was convicted of delivery of more than 28 grams of cocaine for which punishment was assessed at 75 years' confinement. He appealed. The First Court of Appeals in Houston reversed the conviction finding that trial and appellate counsels' deficiencies denied appellant effective assistance of

result unreliable." 466 U.S. at 687, 104 S.Ct. at 2064.

■ The *Strickland* Court continued that the test to be applied in determining whether counsel provided constitutionally satisfactory services is the "reasonably effective assistance" standard. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2063. See also *Hernandez v. State*, 726 S.W.2d 53, 56–57 (Tex.Cr.App.1984); *Saylor v. State*, 660 S.W.2d 822, 824 (Tex.Cr.App.1983). This right does not mean errorless counsel or counsel whose competency is judged by hindsight. *Saylor*, 660 S.W.2d at 824. Rather, the right to counsel affords an accused an attorney "reasonably likely to render and rendering reasonably effective assistance." *Cannon v. State*, 668 S.W.2d 401, 402 (Tex.Cr.App.1984). A fair assessment of counsel's performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances, and to evaluate the conduct from counsel's perspective at the time. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 688–689, 104 S.Ct. at 2064–2065, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955). See also *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S.Ct. 2574, 2588, 91 L.Ed.2d 305 (1986) (holding that in evaluating the first prong of the two-pronged inquiry, counsel's competence is presumed and appellant must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound trial strategy).[1]

In the case under consideration, the Court of Appeals found the first prong of *Strickland* was satisfied (i.e., that trial counsel was ineffective) because counsel failed to object to an extraneous drug transaction the State introduced into evidence before the jury. The court believed that because it was conclusively shown that appellant was not present during the transaction the evidence was immaterial. Specifically, the court wrote:

"[A]n extraneous offense is admissible only when it involves the defendant on trial in the primary case. As the court noted in *Ford [v. State*, 484 S.W.2d 727, 729 (Tex.Cr.App.1972)], evidence of other crimes may unduly prejudice the jury and, therefore it must be shown to be more reliable and of greater probative value. In the instant cause, the testimony and evidence conclusively established that appellant was not present during the second transaction. Thus, none of this evidence was relevant to the criminal charges against which appellant defended himself." 758 S.W.2d at 670–671.

■ In essence, the Court of Appeals "d[id] not feel that the trial counsel's failure to object to these numerous references to highly prejudicial and irrelevant testimony was 'trial strategy,'" because such evidence did not prove identity. The Court of Appeals' analysis is based on the assumption that the only reason that an extraneous transaction may be introduced by the State is to prove identity. True, the "general rule is that an accused may not be tried for some collateral crime or for being a criminal generally." *Williams v. State*, 662 S.W.2d 344, 346 (Tex.Cr.App.1983). See also Tex.R.Crim.Evid. 404(b). But whenever an extraneous transaction is "relevant" and its probative value is not "substantially outweighed by the danger of unfair prejudice, confusion of the issues or by considerations of undue delay, or needless

---

1. This Court, consistent with the *Strickland* standard, has held that the burden of proving ineffective assistance of counsel falls on the defendant, *Cannon*, 668 S.W.2d at 403, and such contentions must be proven by a preponderance of the evidence. *Id; Moore v. State*, 694 S.W.2d 528, 531 (Tex.Cr.App.1985). Moreover, in deciding an ineffective assistance claim, it is not necessary for a reviewing court to address both components of the *Strickland* inquiry if the defendant makes an insufficient showing on either one. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069; *Rico v. State*, 707 S.W.2d 549, 556 (Tex.Cr. App.1983).

presentation of cumulative evidence," Tex. R.Crim.Evid. 403, the evidence is admissible. Tex.R.Crim.Evid. 402. " 'Relevant evidence' means any evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Tex. R.Crim.Evid. 401. See also *Williams*, 662 S.W.2d at 346; *Elkins v. State*, 647 S.W.2d 663, 665 (Tex.Cr.App.1983). A review of the facts is necessary to understand why trial counsel might have thought it relevant to appellant's defense and thus allowed the State to admit evidence of the second drug buy before the jury without objection.

After receiving information that persons were selling rock cocaine at a certain house in Houston, Narcotics Officer W.T. Reeves, dressed in street clothes, went to that location some time between 6:30 and 7:00 p.m. A male, later identified as Ernest Hill, was standing in front of the old, wood frame house. Reeves told Hill that he was there to buy fifty dollars worth of "rock cocaine." Hill let the officer go into the house and instructed him to wait in a room with five or six other people purportedly there also to buy drugs. There was no electricity in the house. After a while, Hill told Reeves that he could go into another room which had been portioned off from the waiting room by a hanging sheet.

This second room was lit only by a couple of candles. There was a "podium" in the room from behind which a male and a female were selling cocaine. After waiting for two people to buy drugs, the officer approached the podium and told the male that he wanted a fifty dollar rock of cocaine. Reeves handed the money to the male who in turn instructed the female to give the officer a rock. The female removed a towel from the top of the podium and told the officer to select one of the several packages of white rocks that were there. The officer chose one and left.

Reeves then met with other officers to plan how they would make their arrests. About twenty or thirty minutes after the first purchase, the officers arrived at a plan and Reeves returned to the house.

There the officer made another drug purchase under circumstances similar to the first purchase except this time the male who was present during the first transaction was not present. About fifteen minutes after this second buy, Reeves, along with other police officers, returned to the house and arrested everyone therein. Appellant was not in the house and was not arrested at this time. Along with others in the house, officers were able to arrest the female who was later identified as Beulah May Samuel. She had a "wad" of money which included the fifty dollar bill used to make the first buy.

While the officers were placing the arrested drug dealers into patrol cars, Reeves observed a silver Corvette drive slowly by the front of the house. Reeves believed that the car was driven by the male who had sold him cocaine and ordered uniformed officers to stop it. The officers attempted to comply with the order but the car sped away.

Based on information from a confidential informant, officers began searching for the male in places he was thought to frequent. About fifteen minutes after raiding the drug house, the officers were finally able to arrest appellant in a nearby restaurant. The Corvette Reeves had observed fleeing from the drug house was located outside the restaurant.

Reeves was the only witness at trial able to identify appellant as the man who sold him cocaine.

■ Counsel's defense was two-fold—misidentification and alibi. To accomplish this, counsel conducted a thorough cross-examination of the officer, presented testimony to show that the officer could have misidentified appellant at trial, and presented testimony that appellant was in the restaurant at the time he supposedly sold Reeves the cocaine. Through his cross-examination of the officer, counsel was able to emphasize and show that the officer viewed the male in a poorly lit area for less than two or three minutes. Counsel, in appellant's defense, called Hill (the lookout at the drug house) and Samuel (the woman behind the podium selling drugs) to testify.

Both witnesses testified that appellant was not at the house at any time—either during the first buy or during the second buy—when the officer bought the cocaine. Hill also testified that appellant resembled another person that was arrested in the raid occurring after the second buy. The defense then called Patricia Ann Phillips to testify. Phillips told the jury that she was at the restaurant where appellant had been arrested and that he had arrived there between 8:00 and 8:30 that night.

Timing of the events occurring at the drug house was important to Phillips' testimony. In order to show that appellant was in the restaurant at a time when the officers were at the house, counsel put on evidence that the house was located about ten minutes away from the restaurant, that the officers were at the house shortly after the first buy, making a second buy and inferentially appellant could not have been in the house during the first buy. The second drug transaction is thus relevant to appellant's claims of misidentification and alibi. Indeed, as the State points out, one of the strongest pieces of evidence supporting appellant's defense is the fact that the appellant was not on the premises thirty to forty minutes after the first buy. In his final argument, trial counsel made this clear. He related why the second drug transaction was highly relevant to appellant's defense:

"[W]e'll talk a little bit about [Officer Reeves's] testimony ..., about what time it was when he·was in the house. And he said ... between 7:00 and ... 8:00 o'clock ... a time of day and of the year that that time of the day would be kind of dark.... There's no lights in the house. Officer Reeves said there were a couple of candles in the room and that he saw the defendant with a black female. I asked him how long he was ... in the house. He said a couple of minutes.

\* \* \* \* \* \*

Now what has the State proven here? How are they going to put this defendant at 3404 Arlington ... based on the testimony that you've been presented? I submit to you that they can't. I don't believe in magic or super illusions. But I'm beginning to believe that the State has a magician that we don't know about. I'm going to tell you why. If the police Officer, Reeves, saw the man there, saw him ... direct this lady as he's testified gave the man some money and saw the man put it with a wad of money that marked fifty-dollar.... *Well, then—and they weren't gone that long....* Officer Reeves said he saw the Corvette right there in front of the house. Nobody else did.... I don't know who the other magician is. That's the man that made [appellant] disappear and appear at another place. Other than that, there is no real ... evidence to tie [appellant] to 3404 Arlington on March the 10th, between 7:00 and 8:00 o'clock." [Emphasis added.]

Moreover, from the officer's testimony about the initial buy (there were no lights or furniture other than a podium, one person stood as lookout and let people in, two people in the house were selling cocaine to others and had a wad of money) the jury would have known that the police were dealing with a drug house, i.e., a place where drugs were being sold. Added to this is the fact that appellant was *conclusively* shown not to be at the house for the second buy and subsequent arrest of others in the house, occurring shortly after the first buy. Thus, appellant could not have been harmed from any testimony about a second buy.

Simply put, we cannot agree with the Court of Appeals. It should be obvious that counsel, in failing to object to evidence of the second drug transaction presented appellant's defense in the manner he deemed proper. Indeed, counsel's failure to object was a strategic move on his part and "might be considered sound trial strategy." *Strickland*, 466 U.S. at 688–689, 104 S.Ct. at 2064–2065. Consequently, we hold that in evaluating the first prong of the *Strickland* two-pronged inquiry appellant has failed to rebut the presumption of counsel's competence in that he has failed to prove that his attorney's representation was unreasonable under prevailing profes-

sional norms and that the challenged action was not sound trial strategy. See *Hernandez*, 726 S.W.2d at 57–59. Cf., *Kimmelman*, 477 U.S. at 385–387, 106 S.Ct. at 2588–2589 (finding counsel deficient for his failure to conduct any pre-trial discovery and to raise Fourth Amendment claims).

■ The Court of Appeals also found that counsel was deficient for admitting appellant's guilt in final arguments. During final arguments, counsel told the jury:

"I've told you about the evidence that's supposed to hurt us. And since I don't have much that's going to help us except people who were here, who were there, who came here and told you they were there and that they were arrested and I don't know how much weight you're going to give that. Beulah May said he wasn't there. Ernest said that he wasn't there. There was a lady who wasn't there but who was at the restaurant, who said 'He was here with me for thirty minutes.' Then here comes the police, flashing guns looking for him. They knew who they were looking for. They were looking for the money they went there to get in the first place; *they just weren't slick enough to get him.*" (Emphasis added)

It is the emphasized portion that appellant insisted, and the Court of Appeals agreed, admitted his guilt. The Court of Appeals found that "[a]lthough standing alone this comment might not be harmful to appellant ..., when this statement considered along with the highly prejudicial testimony that was admitted without objection by the defense, it appears to have been to the great detriment of appellant's cause." 758 S.W.2d at 672. Suffice it to say here that we agree with the Court of Appeals that standing alone counsel's argument does not support a finding of ineffectiveness. The argument appears to be an allusion to the police having a vendetta against appellant and as such went to the restaurant to arrest him only because of that vendetta. This comports with defense counsel's strategy of alibi and misidentification. And once again we cannot say that standing alone the argument is so out of

line as to constitute ineffective assistance of counsel.

After finding that trial counsel was ineffective in representation of appellant, the Court of Appeals concluded that appellate counsel was also deficient for failing to challenge trial counsel's effectiveness. Because we find that trial counsel was not ineffective, it follows that appellate counsel cannot be deemed ineffective for failing to present the spurious claim on appeal. Normally, our review of appellate counsel's performance would stop at this point and because the Court of Appeals addressed all of the other issues presented to it in appellant's brief adversely to appellant's position, we would simply affirm the conviction. However, we believe that the issue merits additional discussion and for the following reasons we will remand the case to the Court of Appeals for further consideration.

In *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), the Supreme Court determined that the constitutional right to counsel requires that on an indigent's first appeal from his conviction court-appointed counsel must support the appeal to the best of her ability and may request permission to withdraw only if she deems the case to be wholly frivolous. If counsel does determine that the record will not support any reversible grounds on appeal she must nonetheless file a brief referring to anything in the record that might arguably support the appeal. Specifically, quoting at length from the opinion, the Court held:

"The constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of amicus curiae.... His role as advocate requires that he support his client's appeal to the best of his ability. Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the [appellate] court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in

the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if the state law so requires, On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal." 386 U.S. at 744, 87 S.Ct. at 1400.

In the case before us, the trial court appointed an attorney to represent appellant on appeal. Appellate counsel initially filed in the Court of Appeals an instrument professing it to be an *Anders* brief. In this brief she merely claimed that:

"Counsel on appeal has thoroughly read and reviewed the entire appellate record in search of any arguable grounds of error to raise which would support either a reversal of the appellant's conviction or some other relief for the appellant. After due diligence of the appellate record, researching the potential grounds for appeal, Appellate Counsel in unable to find any error which she, in good faith, can urge warranting a reversal of this conviction or in support of any other form of relief for the appellant. Appellate Counsel is very aware that she has a duty to advance all arguable grounds of error

... that would afford the appellant a reversal of his conviction or any other relief. *Anders v. California,* 386 U.S. 738 [87 S.Ct. 1396, 18 L.Ed.2d 493] (1967)."

This is obviously deficient and the Court of Appeals was correct in ordering the attorney to file another brief.[2]

■ The Court of Appeals found the second brief filed by counsel to be an acceptable *Anders* brief and, as per the *Anders* opinion, appellant was given the opportunity to respond.[3] He did so, filing a brief alleging that appellate and trial counsel were deficient and that the evidence was insufficient to support the jury's finding of guilt. After receiving appellant's pro-se brief, the Court of Appeals ordered *original* counsel to re-brief "in accordance with Tex.R.App.P. 74." Counsel complied with that order by filing a third brief (non-*Anders*) advancing only the ineffective assistance claim. Appellant then filed a motion to dismiss appellate counsel.

After receiving appellant's motion to dismiss, the Court of Appeals issued its opinion in this case within which it withdrew its order compelling original counsel to file a third brief. The Court determined such action was expedient on its part because "[i]n returning the cause to the position that it occupied prior to our order, we return this cause to *Anders* status and are again empowered to consider *both* counsel's *Anders* brief and appellant's pro-se efforts. Furthermore, in withdrawing our order ... we render irrelevant appellant's motion to dismiss court-appointed [appellate] counsel." 758 S.W.2d at 665 (emphasis in the original). The Court then ad-

---

**2.** Indeed, counsel's "brief" is very much like the letter found unacceptable by the Supreme Court in *Anders.* Appellate counsel in *Anders* wrote a letter to the reviewing court in which he stated the following:

"I will not file a brief on appeal as I am of the opinion that there is no merit to the appeal. I have visited and communicated with Mr. Anders and have explained my views and opinion to him.... [H]e wishes to file a brief in this matter on his own behalf."

**3.** In her second brief, on about half of a page, counsel discusses the evidence adduced at trial. Under *Anders* and our case law, appellate counsel must provide the reviewing court with a

"professional evaluation of the record demonstrating why there are no arguable grounds to be advanced." *High v. State,* 573 S.W.2d 807, 812 (Tex.Cr.App.1978). This evaluation requires not only that counsel refer the court to anything in the record that might arguably support the appeal, citing applicable legal authorities, but it also requires appellate counsel to discuss the evidence introduced at trial which entails providing the reviewing court with ready references to the record. *Id.* We would have found the cursory review of the evidence in counsel's second brief also to be inadequate under *Anders* and its progeny.

dressed the merits of appellant's pro-se brief finding, as discussed above, appellant was afforded ineffective assistance of counsel at trial and on appeal. Although we now reverse that determination, we are uncertain if the Court of Appeals would have found other arguable grounds for review.

█ Under *Anders*, after receiving a brief claiming that there are no arguable grounds for appeal, *the reviewing court* must review the record to make an independent determination. Here the Court of Appeals did find that there were arguable grounds and said so in an opinion that reversed the conviction. That opinion, however, is silent as to whether the Court of Appeals would have found *other* arguable grounds. For this reason we will abate the appeal and remand the case to the Court of Appeals for further actions consistent with this opinion.

█ Furthermore, if the Court of Appeals does find that there are arguable grounds, the appellate court must then guarantee appellant's right to counsel by ensuring that *another attorney* is appointed to represent appellant on appeal. *Anders*, 386 U.S. at 744, 87 S.Ct. at 1400 ("if [an appellate court] finds any of the legal points arguable on the merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal").[4]

█ As stated above, the Court of Appeals, after it determined that there were arguable grounds for the appeal in this case, ordered the attorney to re-brief.[5] This is improper. After an attorney files a proper *Anders* brief (which should be filed with a request for withdrawal from the case) and the appellant is afforded an opportunity to respond, the Court of Appeals—not the attorney—must conduct its own investigation of the record to discover if there are arguable grounds. If grounds are deemed arguable, the Court of Appeals then must abate the appeal and remand the case to the trial court with orders to appoint other counsel to present those and any other grounds that might support the appeal.[6] As we read *Anders*, counsel filing a frivolous brief must be allowed to withdraw from the case and consequently cannot be ordered to argue grounds that she had previously determined to be without merit.

To conclude, we reverse the judgment of the Court of Appeals and remand the case to the Court of Appeals for further actions consistent with this opinion.

CLINTON and BENAVIDES, JJ., concur in the result.

BAIRD, J., not participating.

---

**4.** We note here that appellant was afforded counsel other than original counsel to brief and argue the points of law before this Court. See *Polk v. State*, 676 S.W.2d 408, 410–411 (Tex.Cr. App.1984).

**5.** Apparently, this is common practice in the First Court of Appeals. See *Randle v. State*, 760 S.W.2d 30, 32–33 (Tex.App.—Houston [1st Dist.] 1988, no pet.). In *Randle*, the Court of Appeals found arguable grounds for its review. In a published opinion, after chastising the appellate attorney for his failure to present the errors it deemed arguable, the court remanded the case to the trial court, see *Duncan v. Evans*, 653 S.W.2d 38, 40 (Tex.Cr.App.1983), with orders that "strongly urg[ed]" the trial court to appoint another attorney. *Randle*, 760 S.W.2d at 32.

**6.** Of course, the trial court has the option of allowing the appellant to proceed pro se if he so desires.