In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00068-CR


______________________________




TRACY SHANE SILVA, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 102nd Judicial District Court


Red River County, Texas


Trial Court No. CR00138




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Tracy Shane Silva appeals from his conviction of aggravated assault with a deadly weapon.
See Tex. Penal Code Ann. § 22.02(a) (Vernon Supp. 2006). Silva pled not guilty and waived his
right to a jury trial. He was found guilty by the trial court, and the court sentenced Silva to ten years'
imprisonment. Silva was represented by appointed counsel at trial and by different appointed
counsel on appeal. Silva's appellate attorney has filed a brief in which he concludes that, after a
review of the record and the related law, the appeal is frivolous and without merit. 

 Officer Fred Gerwick of the Clarksville Police Department testified that, on July 7, 2003, a
9-1-1 emergency call was received by the department. On his way to respond to that call, he
encountered a red pickup truck "with a disturbance going on inside of it or on it." Gerwick stated
that he saw Silva on the hood of the truck and that a woman was driving. He assumed this was the
disturbance precipitating the 9-1-1 call and stopped to investigate. Silva told Gerwick that he (Silva)
had just been run over by the truck and was injured. Gerwick called for an ambulance. The victim,
"Ms. Wheeler," the driver, was crying and upset and told Gerwick that she was the victim of an
assault and that Silva had tried to kill her. After the ambulance left, Gerwick went to Silva's house
and took photographs of the damage Silva was alleged to have done. These photographs were
introduced into evidence, along with a photograph of a sledgehammer. At the house, Gerwick found
a sledgehammer, a table that had "punch marks" in it from being hit with a sledgehammer, a hole in
the floor, and a hole in the wall. 

 Lacey Laney Jacobs May (1) testified that, on July 7, 2003, she was living with Silva. When
she came home from work the night of the assault, Silva was sitting on the front steps of the house
and asked her to come in the house to talk. Silva locked the door behind them, and May saw the
sledgehammer (which was normally kept in the garage) leaning against the door. May testified Silva
accused her of being unfaithful and then took the sledgehammer and struck the dining room table. 
Silva then threatened to kill her. May began backing up to the bedroom, begging Silva not to kill
her. She testified she was terrified and in fear for her life. Silva swung the sledgehammer again, six
to seven inches from her head, and continued swinging the sledgehammer at her. May testified that,
when she fell to the floor, she dropped a set of truck keys; she grabbed the keys and told Silva she
needed cigarettes that were in the truck, with the intention of getting to the truck and getting away
from Silva; as she left to go to the truck, Silva followed her out and jumped into the bed of the truck. 
May started driving toward the police station. As they approached an intersection, Silva jumped out
of the truck, hurting himself. May stated Silva came out from underneath the truck and jumped onto
the hood with his arms out, trying to block her view; she was still driving the truck toward the police
station. 

 Silva testified that he came home from work, saw a note from another man addressed to May,
became angry, and began hitting things in the house with a sledgehammer. He stated he did cause
the damage shown in the photographs introduced into evidence. However, he stated that May was
not home at the time and that he did not threaten May in any way. 

 Appellate counsel summarizes the trial in his brief and states that he has studied the record
and finds no error preserved for appeal that could be successfully argued. The brief contains a
professional evaluation of the record and advances three arguable grounds for review: (1) legal and
factual sufficiency of the evidence to establish that Silva committed aggravated assault with a deadly
weapon; (2) ineffective assistance of counsel; and (3) whether the indictment was sufficient to
support Silva's conviction. This meets the requirements of Anders v. California, 386 U.S. 738
(1967); Stafford v. State, 813 S.W.2d 503 (Tex. Crim. App. 1991); and High v. State, 573 S.W.2d
807 (Tex. Crim. App. [Panel Op.] 1978).

 Counsel mailed a copy of the brief to Silva on July 17, 2007, informing Silva of his right to
examine the entire appellate record and to file a pro se response. Counsel simultaneously filed a
motion with this Court seeking to withdraw as counsel in this appeal. This Court notified Silva that
any pro se response was due on or before August 16, 2007. Silva has not filed a response, nor has
he requested an extension of time in which to file such a response. 

 We have reviewed the possible issues raised by counsel in his appellate brief, and we agree
that: (1) the evidence, as related above, is legally and factually sufficient; (2) the record does not
reveal ineffective assistance of counsel under the guidelines of Strickland v. Washington, 466 U.S.
668 (1984); and (3) the indictment against Silva alleges all the necessary elements of aggravated
assault with a deadly weapon and is therefore sufficient to support his conviction. Our review has
not revealed any reversible error. (2)

 We affirm the judgment of the trial court. 


 Jack Carter

 Justice


Date Submitted: September 17, 2007

Date Decided: October 2, 2007


Do Not Publish

1. May testified that, on July 7, 2003, she used the name "Lacey Wheeler." When asked to
state her name during trial, she replied, "Lacey Laney Jacobs." She then testified that she now goes
by the name of "Lacey May." We refer to her in this opinion as May. 
2. Since we agree this case presents no reversible error, we also, in accordance with Anders,
grant counsel's request to withdraw from further representation of Silva in this case. No substitute
counsel will be appointed. Should Silva wish to seek further review of this case by the Texas Court
of Criminal Appeals, Silva must either retain an attorney to file a petition for discretionary review
or he must file a pro se petition for discretionary review. Any petition for discretionary review must
be filed within thirty days from the date of either this opinion or the last timely motion for rehearing
that is overruled by this Court. See Tex. R. App. P. 68.2. Any petition for discretionary review must
be filed with this Court, after which it will be forwarded to the Texas Court of Criminal Appeals
along with the rest of the filings in this case. See Tex. R. App. P. 68.3. Any petition for
discretionary review should comply with the requirements of Rule 68.4 of the Texas Rules of
Appellate Procedure. See Tex. R. App. P. 68.4.


which
provides  the  language  necessary  to  serve  as  such  an  order.  Three  days  have  now  expired
since Mr. Morrow was jailed. Under the authority of Amaya, we must conclude an unreasonable
time has elapsed without the issuance of the necessary order of commitment. 

 We therefore grant the petition for writ of habeas corpus and order that James Morrow be
immediately discharged from custody.


 Josh R. Morriss, III

 Chief Justice


Dated: June 13, 2002


Do Not Publish
1. The court also ordered him to pay "temporary spousal support" of $500.00 per month and
that he is "responsible for the timely payment of" minimum monthly payments on four medical bills,
a telephone bill, and a television bill. The trial court also ordered Mr. Morrow to make all past due
payments on a minivan in the amount of $2,281.56 and to continue to make all payments on the van
until the court ordered otherwise. The trial court also ordered both parties to attend a "parent
education class."
2. Ms. Morrow also alleged that he failed to attend a "parent education class," that he had not
made the minimum payments required by the order, and that he failed to make the payments on the
minivan as ordered, resulting in its repossession. Mr. Morrow states in his petition that the May
child support payment was made on Monday, June 3, 2002, one week before the hearing, and also
that the June payment was made on June 11, 2002.
3. Although its title includes "order of commitment," it does not contain any language of
commitment. It is only an order on contempt. 
4. The Amarillo court of appeals also held the trial court was without jurisdiction to sign the
contempt judgment after the court of appeals had already granted the writ of habeas corpus and
released the relator on bond. In re Morgan, 886 S.W.2d 829 (Tex. App.-Amarillo 1994, orig.
proceeding).