Opinion issued October 4, 2007 















Opinion
issued October 4, 2007








 

 

 

 

 

 








 

     

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NOS. 01-07-00022-CR & 01-07-00023-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



JAMALE JEROD LEWIS, Appellant

 

V.

 

THE STATE OF TEXAS,
Appellee

 

 



On Appeal from the 184th District Court

Harris County, Texas

Trial Court Cause Nos. 1037538 & 1037539

 








 



M E M O R A N D U M  O P I N I O N

Jamale Jerod Lewis pleaded guilty to
the offenses of aggravated sexual assault and attempted capital murder of a
peace officer.  Lewis elected to have his
punishment assessed at a presentence investigation hearing (“P.S.I.”) without an
agreed sentence recommendation.  At the
end of the hearing, the court sentenced Lewis to life imprisonment for both
offenses, to run concurrently, the maximum prison sentence available under the
statute.  See Tex. Penal Code §
12.32 (Vernon
Supp. 2006).  Lewis’s
counsel on appeal has submitted a brief stating his professional opinion that
the appeal is without merit and that there are no arguable grounds for reversal
on appeal.  See Anders v. California,
386 U.S.
738, 744, 87 S. Ct.
1396, 1400 (1967).  Lewis responded pro
se.  In four issues, Lewis contends that
(1) he was denied due process because the judge did not consider the sentencing
range with “an open and fair mind”; (2) his trial counsel was ineffective; 3)
his plea was involuntary, without which the State does not have enough evidence
to support his conviction; and 4) the judgment should be reformed because it
should not have included a finding of a deadly weapon.  We have reviewed the record and, having found
no reversible error, we affirm Lewis’s conviction.  

Background

On August 16, 2005, Lewis knocked on
Shakivia Pope’s door and asked for a lighter. 
Lewis and Pope were neighbors, and Pope knew him and his family
well.  At that time, Pope noticed that
Lewis had a firearm (shotgun) next to the door. 
Pope was at home with her younger twenty-year-old sister, who was four
months pregnant.

Later that day, while Pope’s sister was sleeping,
Pope answered another knock at the door, at which time Lewis, wearing a mask,
punched her in the face.  Lewis pointed
the gun at her and demanded her money. 
When Pope responded that she did not have any money, Lewis told her to
take off her clothes.  Pope removed her
shirt. Lewis then directed Pope into her bedroom, where he told her to remove
the rest of her clothes and sit on the bed. 
After Pope did this, Lewis removed his pants and told Pope to remove his
shirt.  Lewis then pushed Pope’s legs
apart and forcibly had sexual intercourse with her, while holding her hands
over her head.  After this, Lewis forced
Pope to perform oral sex on him and then made Pope climb on top of him to
continue having sexual intercourse.  Throughout
the incident, Lewis kept his face covered with a mask.

                After Lewis finished assaulting Pope, he told her to put some
clothes on and asked if she had any credit or debit cards.  He directed her, while holding the gun, to
her car and instructed her to drive.  A
few blocks later, Lewis told Pope to pull over and then forced her to get in
the trunk of her car and took her wallet and her credit cards.  He drove around for awhile, making a few
stops.

          When
Lewis finally let Pope out of the trunk, they had returned to Pope’s
house.  Lewis took Pope back to her
bedroom and sexually assaulted her again. 
He again forced Pope to perform oral sex and to climb on top of
him.  While this was occurring, Pope
noticed a flashlight beam on the wall coming toward the room.  When Lewis became aware of it, he pushed Pope
off of him and ran out the front door naked. 
Pope put on a robe and went to the front of the house where she saw
police officers.  While hiding under a
bed, Pope’s sister had called the police to report her kidnapping.  Pope’s sister identified the assailant as
Lewis.

Houston Police Department Officer J. Sealy
was one of the first officers to respond to Pope’s house.  He believed that he was responding to a
kidnapping that had already occurred, but when he arrived, Pope’s sister told
him that Lewis was in the back room with Pope. 
When Lewis ran out of the house, Officer Sealy chased him into a nearby
wooded area.  Officer Sealy first tasered
Lewis with the darts and then “dry stunned” him with the taser again, three or
four times.  While that was going on,
Officer Sealy ordered Lewis to stop. 
Lewis then began to attack Officer Sealy and succeeded in throwing him
on the ground, face down, and then jumped on his back.  Lewis put his arm around Officer Sealy’s neck
and began to choke him while twisting his head backward over his shoulder.  Fearing for his life, Officer Sealy pulled
his pistol, pressed it into Lewis’ ribs, and pulled the trigger.  Nothing happened and Lewis and Officer Sealy
began fighting for the gun.  Lewis tried
to force the gun towards Officer Sealy. 
In order to prevent Lewis from being able to use the gun on him, Officer
Sealy managed to point the gun away and discharged all his rounds.  Lewis began choking Officer Sealy again,
asked him for his handcuffs, and tried to remove Officer Sealy’s baton from his
holster.  In the process of trying to get
the handcuffs, Lewis released his grip, and Officer Sealy was able to run a
short distance away.  Officer Sealy saw
Lewis running into the woods, before he collapsed.  Other officers located Officer Sealy and
helped him to an ambulance.

Police officers went to Lewis’s
residence and saw a naked man in the window. 
Police made contact with three people who occupied the residence, all of
whom denied knowing Lewis and his presence in the house.  The officers searched the house, found Lewis,
and arrested him.

Lewis’s counsel filed many pre-trial
motions, including a motion for a continuance and a request for a private
investigator, which were granted.  Lewis
pleaded guilty to the felony offense of aggravated sexual assault and attempted
capital murder of a police officer. 
During the P.S.I hearing, Shakivia Pope and Officer Sealy testified for
the prosecution as to the events that took place.  Lewis called three witnesses: his grandmother
who raised him, his uncle, and his older brother.  They testified that Lewis told them he was
sorry for what had happened.  They also
testified about Lewis’s past (his father murdered his mother when Lewis was
eight years old) and the effect that had on Lewis.  They testified that Lewis had trouble in
school, had nightmares, had spent time in mental hospitals, and had done
drugs.  Lewis also took the stand, during
which he accepted responsibility for the offenses although he claimed not to
have any memory of the crimes, because he was high on PCP at the time.  Lewis also testified that he heard voices
after his mother died.

          After
hearing all the testimony and reviewing the evidence, the court sentenced Lewis
to life imprisonment for both offenses, to run concurrently. 

Anders Procedure

The brief submitted by Lewis’s
court-appointed counsel states his professional opinion that there are no
arguable grounds for reversal on appeal and that any appeal would, therefore,
lack merit.  See Anders, 386 U.S. at 744, 87 S. Ct. at 1400.  Counsel’s brief meets the minimum Anders requirements by presenting a
professional evaluation of the record and stating why there are no arguable
grounds for reversal on appeal.  See Gainous v. State, 436 S.W.2d 137,
138 (Tex. Crim. App. 1969).  Counsel sent
a copy of the brief to Lewis, requested permission to withdraw from the case,
and notified Lewis of his right to review the record and file a pro se
response.

When we receive an Anders brief from a defendant’s
court-appointed attorney who asserts that no arguable grounds for appeal exist,
we must determine that issue independently by conducting our own review of the
entire record.  See Anders, 386 U.S. at 744, 87 S. Ct. at 1400 (emphasizing that
reviewing court—and not counsel—determines, after full examination of
proceedings, whether case is “wholly frivolous”); Stafford v. State, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991).  We also consider any pro se response that the
defendant files to his appointed counsel’s Anders
brief.  See Bledsoe v. State, 178 S.W.3d 824, 826—28 (Tex. Crim. App. 2005). 

Thus, our role in this Anders appeal, which consists of
reviewing the entire record while remaining mindful of the defendant’s pro se
contentions, is limited to determining whether arguable grounds for appeal
exist.  See id. at 827.  If we
determine that arguable grounds for appeal exist, we abate the appeal and
remand the case to the trial court to allow the court-appointed attorney to
withdraw.  See id.  Then, the trial
court either appoints another attorney to present all arguable grounds for
appeal or, if the defendant wishes, allows the defendant to proceed pro
se.  See
id.  We do not rule on the ultimate
merits of the issues raised by Lewis in his pro se response.  If we determine that arguable grounds for
appeal do exist, Lewis is entitled to have new counsel address the merits of
the issues raised.  See id.  “Only after the
issues have been briefed by new counsel may [we] address the merits of the
issues raised.”  Id.  

On the other hand, if our independent
review of the record leads us to conclude that the appeal is wholly frivolous,
we may affirm the trial court’s judgment by issuing an opinion in which we
explain that we have reviewed the record and find no reversible error.  See id.
at 826—28.  Lewis may challenge the
holding that there are no arguable grounds for appeal by petitioning for
discretionary review in the Court of Criminal Appeals.  Id.
at 827 & n.6.  

Following Anders and Bledsoe, we
have reviewed the record, Lewis’s appointed counsel’s Anders brief, and Lewis’s pro se response to that brief and
conclude that no reversible error exists. 
Consequently, we affirm the judgment of the trial court and grant
Lewis’s appointed counsel’s motion to withdraw.[1]  




Conclusion

 

We affirm the judgment
of the trial court and grant appointed counsel’s motion to withdraw.  

 

 

 

 

 

                                                                             Jane Bland

                                                                             Justice

 

Panel
consists of Chief Justice Radack and Justices Alcala and Bland.

Do not publish. 
Tex. R. App. P. 47.2(b).

 











[1] Appointed counsel still has a duty to inform appellant
of the result of this appeal, send appellant a copy of this opinion and
judgment, and notify appellant that he may, on his own, pursue discretionary
review in the Court of Criminal Appeals.  Tex. R. App. P. 48.4; see also Bledsoe v. State, 178
S.W.3d 824, 827 (Tex. Crim. App. 2005); Ex parte Wilson,
956 S.W.2d 25, 27 (Tex. Crim. App. 1997); Stephens v. State, 35 S.W.3d
770, 771–72 (Tex. App.—Houston
[1st Dist.] 2000, no pet.).