ACCEPTED
06-17-0104-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
12/22/2017 4:45 PM
DEBBIE AUTREY
CLERK

CASE NO. 06-17-00104-CR

IN THE COURT OF APPEALS

SIXTH APPELLATE DISTRICT OF TEXAS

TEXARKANA, TEXAS

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
12/22/2017 4:45:09 PM
DEBBIE AUTREY
Clerk

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

TORRY JAMAL REED, *Appellant*

v.

THE STATE OF TEXAS, Appellee

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Appealed from the 124th District Court
Gregg County, Texas
Trial Court No. 41, 786-A

_____

**ANDERS BRIEF IN SUPPORT OF
MOTION TO WITHDRAW AS COUNSEL**

_____


Respectfully submitted,

Gerald J. Smith, Sr.
State Bar No. 24039316

The Law Office of G.J. Smith, Sr., PLLC
P. O. Box 200395
Arlington, Texas 76006
Telephone:  (817) 635-3100
Fax:           (817) 635-3104
attorney@gjsmithlaw.com
ATTORNEY FOR APPELLANT

TORRY JAMAL REED, Appellant

v.

THE STATE OF TEXAS, Appellee

## IDENTITY OF THE PARTIES AND COUNSEL
Pursuant to T.R.A.P. 38.1(a)

| | |
|---|---|
| Appellant: | Torry Jamal Reed, Inmate #02122873<br>12120 Savage Drive, Midway, Texas 75852 |
| Trial Counsel: | J. Scott Novy, Attorney At Law<br>505 E. Maggrill St., Longview, TX 75601 |
| State's Trial Counsel: | Stacey L. Brownlee, Assistant District Attorney, Gregg County,<br>101 E. Methvin, Longview, Texas 75601 |
| Trial Judge:<br>District, | Honorable Alfonso Charles, District Judge, 124th Judicial<br><br>101 E. Methvin, Ste. 447, Longview, Texas 75601<br>Texas |
| Appellant's Counsel: | Gerald J. Smith, Sr., Law Office of G. J. Smith, Sr., PLLC,<br>P. O. Box 200395, Arlington, TX 76006 |
| State's Counsel<br>on Appeal: | John Roberts, Assistant District Attorney; Gregg County,<br>101 E. Methvin St., Ste. 333, Longview, TX 75601 |

# TABLE OF CONTENTS

IDENTITIES OF PARTIES AND COUNSEL…………………………………………1

TABLE OF CONTENTS ……………………………………………………………2

INDEX OF AUTHORITIES …………………………………………………………..3

STATEMENT OF THE CASE ………………………………………………………..6

CERTIFICATION OF COUNSEL ……………………………………………………6

STATEMENT OF FACTS ……………………………………………………………7

CHANGE OF PLEA FROM NOT GUILTY TO GUILTY …………….………...14

POSSIBLE ISSUE NO. ONE ……………………………………………………16

Did the defendant voluntarily changed his plea of not-guilty to guilty?

SUMMARY OF THE ARGUMENT…………………………………………………16

ARGUMENT AND AUTHORITIES……………………………………………17

PRAYER……………………………………………………………………………19

CERTIFICATE OF COMPLIANCE ………………………………………………19

CERTIFICATE  OF SERVICE………………………………………………………19

# TABLE OF AUTHORITIES

**Cases**

*Anders v. California,* 386 U.S. 738 (1967) ... . . . . . . . . . . . . . . . . . . . . . . . . . .....6

*High v. State,* 573 S.W. 2d 807 (Tex. Crim. App. 1978)……………………….6

Stafford v. State, 813 S.W.2d 503 (Tex.Crim.App. 1991)……………………...6

**Statutes**

Tex.Code Crim. P., Art.21…………………………………………………17

Tex.Code Crim. P., Art. 26.13………………………………………………18

Tex.Code Crim. P., Art. 42…………………………………………………17

## STATEMENT OF THE CASE

This is an appeal from a conviction for Murder. (CR-168). Appellant entered a plea of guilty following two days of jury trial. (RR 12, Pg. 10), and requested that the jury assess punishment. (RR 9, Pg. 10) The jury assessed punishment at confinement for a term of 75 years and a fine of $10,000. (RR 9, Pg. 106) For clarity, THE STATE OF TEXAS will be referred to as "the State", and TORRY JAMAL REED will be referred to as "DEFENDANT" or "APPELLANT".

## CERTIFICATE OF COUNSEL

The Attorney's role as an advocate on appeal for his client requires that the attorney support the client's appeal to the best of the attorney's ability; however, no attorney is required to pursue on appeal any matter which is frivolous, without merit, or not supported by law or the introduced evidence as shown within the Clerk's Record and Reporter's Record. See, *Anders v. California*, 386 U. S. 738; 87 S. Ct. 1396; 18 L.Ed. 2d 493 (1967); *Stafford v. State*, 813 S.W.2d 503 (Tex.Crim.App. 1991) and *High v. State*, 573 S.W.2d 807, 807, 810-811 (Tex.Crim.App. 1978).

I, Gerald J. Smith, Sr., the retained attorney on appeal for Appellant Torry Jamal Reed, do hereby state that I have diligently searched both the Clerk's Record and the Reporter's Record and the exhibits in cause no. 41, 786-A of the 124th

5

Judicial District Court of Gregg County, Texas. I have thoroughly reviewed and examined the facts and researched the applicable law of Texas and the United States, and I have painstakingly searched for any arguable issue. It is my professional opinion that, except as indicated within the Appellant's Brief prepared by me, no preserved error, no fundamental error, no harmful error and no reversible error occurred in this case. In conformity with the law applicable to appeals like this, I shall set forth written argument, authorities, and record references, in support of my legal opinion on the issues which could arguable sustain an appeal in this case.

## STATEMENT OF FACTS

## TRIAL ON THE MERITS

Appellant was originally arrested for the charged of murder and assigned court appointed attorney J. Scott Novy.  The State called nine witnesses in its case in chief.

Dennis Phillips

Dennis Phillips testified for the State.  He was employed as a Police Sergeant with the City of Longview Police Department. (RR Vol 9, Pg. 21)  He testified that he responded to a call coded as a police shooting or shots fired at the Signal Hill Apartments. (RR Vol 9, Pg. 25)  He had a description of the possible actor's vehicle; an orange Eclipse.  (RR Vol 9, Pg. 25)  He spoke to several witnesses but nobody actually witnessed the shooting.  (RR Vol 9, Pg. 32)

## Benny Cooks

Benny Cooks testified for the State. He was employed as a patrolman with the City of Longview Police Department. (RR Vol 9, Pg. 36) He had a description of the possible actor's vehicle; a red or orange Mitsubishi. (RR Vol 9, Pg. 38) He located a dead guy (Deaundry Rossum) inside the car. (RR Vol 9, Pg. 41) Cooks secured one witness, Marcus Davis, in his police car. (RR Vol 9, Pg. 42)

## Franceshell Nelson

Franceshell Nelson testified for the State. She and witness Marcus Davis lived in the Signal Hills apartment complex where shooting occurred. (RR Vol 9, Pg. 48) She heard gunshots as she went inside her apartment. (RR Vol 9, Pg. 53) She called 911. (RR Vol 9, Pg. 48) She saw an "old school" car speed away from the apartments. (RR Vol 9, Pg. 59)

## Marcus Davis

Marcus Davis testified for the State. While removing his son from a car seat in back seat of their car, although he never saw any shooter, he heard eight or nine gunshots. (RR Vol 9, Pg. 79) He did here someone say, "Y'all shot me." (RR Vol 9, Pg. 76) He heard a car burn out. (RR Vol 9, Pg. 82)

## Don Robert Perry Jr

Don Robert Perry Jr. testified for the State. He was roommates with the deceased Rossum. (RR Vol 9, Pg. 95) The deceased and Brendan Douglas had a

7

conversation about buying drugs. (RR Vol 9, Pg. 107) The deceased drove with Douglas and two others into Shreveport to buy drugs. (RR Vol 9, Pg. 116) But, returned to the Signal Hills apartment complex at 9:00 pm without a purchase. (RR Vol 9, Pg. 122) Two people come from around a building and walk past the car where they sat. (RR Vol 9, Pg. 127) Douglas shakes hands with the two men then takes off running. (RR Vol 9, Pg. 127) Then the gunfire starts. (RR Vol 9, Pg. 127) Perry sees the deceased Rossum fall, then he sees somebody go in his [sic] pockets. (RR Vol 9, Pg. 136) One of the men looks up and looks into Perry's face. (RR Vol 9, Pg. 140) Perry had never seen Defendant Torry Reed before the day of his testimony. (RR Vol 9, Pg. 178)

Elginn Jackson

Elginn Jackson testified for the State. Jackson was present at the time of the shooting. (RR Vol 9, Pg. 182) Testified that he, the deceased, Douglas and another left McDonald's to go purchase marijuana and cocaine. (RR Vol 9, Pg. 192) The deceased had over one thousand dollars. (RR Vol 9, Pg. 193) Traveled to Shreveport then traveled back to Longview without drugs and returned to Signal Hills apartment complex so Douglas could purchase weed. (RR Vol 9, Pg. 200-201) While Douglas went upstairs, the deceased Rossum stood by the driver's side door while Jackson and Perry Jr. sat in the deceased car awaiting Douglas' return. (RR Vol 9, Pg. 204) He noticed two guys coming from the wooded area. (RR Vol 9, Pg.

8

204) He heard men talking before he hears a single gunshot; causing him to immediately take off running. (RR Vol 9, Pg. 208) He does not remember the number of gunshots but he remembers getting shot four times. (RR Vol 9, Pg. 209) As he lay fallen to the ground behind the car, he heard the deceased say, "Man, you shot me." (RR Vol 9, Pg. 211) Then he remembers someone going through his pockets. (RR Vol 9, Pg. 213) He recalls them running to, getting inside and leave in a light colored car that looked like a Lincoln. (RR Vol 9, Pg. 215)

Brandon Thornton

Brandon Thornton testified for the State. He was employed in the traffic division with the City of Longview Police Department. (RR Vol 9, Pg. 242) Worked off-duty for Good Shepherd Medical Center assigned to the ER area. (RR Vol 9, Pg. 243) Found four black males in the hospital parking lot smoking cigarettes, standing around a parked SUV. (RR Vol 9, Pg. 247-248)

Billy Richardson

Billy Richardson testified for the State. While in the parking lot smoking a cigarette, a man whom he did not know jumped into his car with him. (RR Vol 9, Pg. 255) He left and dropped the guy off at the graveyard by Good Shepherd as requested. (RR Vol 9, Pg. 257) He never knew his name. (RR Vol 9, Pg. 258)

Gabrina Ward

Garbina Ward testified for the State. There was a time when she owned a light colored Lincoln. (RR Vol 9, Pg. 265) There was one occasion whereas she allowed Korvarsia Skinner to drive the Lincoln. (RR Vol 9, Pg. 265) On a separate occasion, [May 15th, (RR Vol 9, Pg. 272) Skinner took her Lincoln without her permission. (RR Vol 9, Pg. 266) Either Brendan Douglas or Korvarsia Skinner called her back and said they were on their way back with her car. (RR Vol 9, Pg. 269) Later on, Skinner, Douglas and two other people were at her apartment. (RR Vol 9, Pg. 275)

John A. Stash, D.O. – testified for the State. Worked as a Forensic Pathologist for Forensic Medical Management Services in Tyler. (RR Vol 10, Pg. 17) He performed an autopsy on Deaundry Rossum. (RR Vol 10, Pg. 19) Found two gunshot wounds; right cheek area and right side of face. (RR Vol 10, Pg. 22)

Korvarsia Skinner

Korvarsia Skinner testified for the State. His attorney, John Moore, was present during his testimony. (RR Vol 10, Pg. 34) He knows Torry Reed from Johnson Apartments. (RR Vol 10, Pg. 41) He knows Torry Red's brother, Deion Reed. (RR Vol 10, Pg. 42) Testified that Gabrina Ward gave him the keys to her Lincoln to retrieve his CD out. (RR Vol 10, Pg. 45) States that Brendan Douglas walked up. (RR Vol 10, Pg. 46) They go up to Gabrina Ward's (aka Sabrina) apartment. (RR Vol 10, Pg. 47) Inside the apartment are, Deion [Reed], Little B

10

[Brendan Douglas], Thrill [Leonard Mitchell] and Sabrina. (RR Vol 10, Pg. 47)

Deion Reed came in after they entered Sebrina's apartment. (RR Vol 10, Pg. 48) He heard Deion and Douglas talking about a lick they had. (RR Vol 10, Pg. 49)

Skinner took Gabrina's car keys to the Lincoln and drove Douglas to his house. (RR Vol 10, Pg. 48-249) Deion and Trill rode with them. (RR Vol 10, Pg. 50) Douglas tells him to drop him off behind McDonalds. (RR Vol 10, Pg. 51) As Douglas gets out of the Lincoln, he instructs them to go to Signal Hills apartment. (RR Vol 10, Pg. 52) It was still daylight. (RR Vol 10, Pg. 53) They park behind the building. (RR Vol 10, Pg. 54) They leave and ride to Deion's house. (RR Vol 10, Pg. 59) Torry Reed is there. (RR Vol 10, Pg. 59)

Skinner texts Douglas from Torry Reed's phone. (RR Vol 10, Pg. 59) While in the car, Torry tapped Skinner on the shoulder and stated that he wanted Torry to come get him from behind E-Z Mart. (RR Vol 10, Pg. 69) They pull from there to the Signal Hills Apartments. (RR Vol 10, Pg. 71) Back to the spot they were parked earlier that day. (RR Vol 10, Pg. 71) Torry and Deion get out of the car. (RR Vol 10, Pg. 74) At the base of the staircase, he [Torry] gets on his phone. (RR Vol 10, Pg. 74) He gets off the phone and walks around to the front of the building. (RR Vol 10, Pg. 75) About a minute and a half, gunshots; hear like six or seven gunshots. (RR Vol 10, Pg. 75) He sees Douglas running from the car. (RR Vol 10, Pg. 77) Douglas gets into the Lincoln. (RR Vol 10, Pg. 77) Douglas had been shot. (RR Vol

11

10, Pg. 78) Torry and Deion run up to the car and Skinner stops the car and they get inside. (RR Vol 10, Pg. 79) He let Torry and Deion out at the soccer fields on Estes. (RR Vol 10, Pg. 81) Douglas handed one of them the gun. (RR Vol 10, Pg. 83) It was a Hi-Point 9-millimeter. (RR Vol 10, Pg. 85) They drive Douglas to Good Shepherd Hospital. (RR Vol 10, Pg. 86)

Paul Penick

Paul Penick testified for the State. He formally was employed as a patrol officer for Longview Police Department. (RR Vol 10, Pg. 142) While looking for a suspect matching the description of Brandon Brown, during a pat down search, found a gun in his right pants pocket. (RR Vol 10, Pg. 143) It was a Hi-Point 9-millimeter. (RR Vol 10, Pg. 146). The magazine had both .380 cal and 9 millimeter bullets. (RR Vol 10, Pg. 148-149).

Jimmie Redmon

Jimmie Redmon testified for the State. He worked as a Physical Evidence Specialist for the Longview Police Department. (RR Vol 10, Pg. 150) He found and identified shell casings for both Winchester .380 and a Federal .380 (RR Vol 10, Pg. 174-175), and also, 9-millimeter cartridge casings. (RR Vol 10, Pg. 177)

Dan Reigstad

Dan Reigstad testified for the State. He worked as a Senior Crime Scene Detective and Senior Latent Print Examiner for the Longview Police Department.

(RR Vol 10, Pg. 211) He performed a search at 104 Vesta under a search warrant. (RR Vol 10, Pg. 213) Found an AMT .380 Kurz pistol (RR Vol 10, Pg. 219) loaded with .380 caliber round in the chamber. (RR Vol 10, Pg. 220) located under the cushions of the couch in the living room. (RR Vol 10, Pg. 226) Collected a live Winchester .380-caliber round in the magazine. (RR Vol 10, Pg. 221) He compared fingerprints collected to Rossum, Torry Reed, Deion Reed, Brendon Douglas, Dashun Taylor, Korvarsia Skinner, Elginn Jackson, and Leonard Mitchell. (RR Vol 10, Pg. 231)

Chris Taylor

Chris Taylor testified for the State. He worked as a Physical Evidence Specialist for the Longview Police Department. (RR Vol 10, Pg. 241) He works part time for Good Shepherd Hospital in a role to maintain security and officer presence. (RR Vol 10, Pg. 242) He photographed the Lincoln Town Car located in the parking lot. (RR Vol 10, Pg. 244) Compared latent fingerprints taken from the vehicles and known prints. (RR Vol 10, Pg. 246) Positive comparisons were made with Dashun Taylor, Korvarsia Skinner, and Brendon Douglas. (RR Vol 10, Pg. 246)

## CHANGE OF PLEA FROM NOT GUILTY TO GUILTY

Following the State resting in its case-in-chief, in open court Appellant changed his plea of not guilty to a plea of guilty, with the jury to assess punishment. A plea offer had been rejected by Appellant and subsequently withdrawn by the State

following the expiration of a deadline. (RR Vol. 5, Pg. 4) After entering a plea of guilty, the trial court found Appellant guilty, and the following was recorded:

Q. Is your name Torry Reed?
A. Yes, sir

Q. And to make a long story short, you; Mr. Cobb, the investigator; and myself; and your mom and sisters have had a long discussions in the last – yesterday and this morning; is that correct?

A. Yes, sir.

Q. And we've advised you about the advantages and disadvantages about entering a plea of "guilty" now. Have we – have we done that?

A. Yes, sir.

Q. And do you want to enter a plea of "guilty" now, do you want to continue, what do you want to do? And you know the advantages of entering a plea now, don't you? Did we discuss that with you?

A. Uh-huh, yes, sir.

Q. Okay. And it – it's crucial that we kind of know, for time purposes, what do you want to do. So if you want to do that, the Judge would admonish you about doing that. And then we – I told you how we would proceed after that, didn't we?

A. Yes, sir.

Q. Or we can still continue with the trial. So do you want – do you want to enter a plea and move on to punishment?

A. Yes, sir.

Q. Okay.

(RR Vo. 12. Pg. 7-8)

Subsequently, the trial court found Appellant guilty and the jury heard punishment evidence before assessing punishment within the legal range of punishment. (RR Vo. 12. Pg. 106) Appellant requested that an appeal be filed.

## POSSIBLE ISSUE NUMBER ONE

Did the defendant voluntarily changed his plea of not-guilty to guilty?

## SUMMARY OF THE ARGUMENT

Careful review of the reporter's record indicate that no errors were made in the failure to completely and properly admonish Appellant, and there was no showing on the record of harm as would be required to reverse the conviction and sentence. The trial court receive a plea of guilty, and later conducted a contested proceeding

The trial court received a plea of guilty, and later conducted a contested punishment proceeding. The transcript and judgment also reveal that Appellant was sentenced within the statutory guidelines for the charged offense and Appellant was given credit for any time he was entitled to receive. (RR 12, Pg. 109). Accordingly, counsel believes any record-based argument that the sentences did not comply with constitutional and statutory mandates or that the

sentencing proceeding was conducted outside the parameters of Article 42 of the Texas Code of Criminal Procedure would be wholly without merit and frivolous.

## ARGUMENT AND AUTHORITIES

Counsel for Appellant has reviewed the complaint and indictment to the underlying case. It appears to be compliant with Chapter 21 of the Texas Code of Criminal Procedure and all other relevant provisions. Likewise, it is counsel's position that this complaint, once formally pled to, is beyond the subsequent challenge as to any deficiencies. In this case Appellant was charged with murder and aggravated robbery, both first degree felonies and subsequently pled guilty to the murder charge and sentenced within the punishment range for that offense. In exchange for the plea of guilty to murder the state no longer pursued the aggravated robbery charge. (RR Vol. 12, Pg. 13) Certainly, Appellant is entitled to a fair and impartial jury trial and counsel at said trial, as well as a change of plea, following and with the advice of counsel, of which, was received from Mr. J. Scott Novy. J. Scott Novy represented Appellant through the jury trial and later at the hearing changing his plea, then at the punishment phase of the case. (RR 12, Pg. 105)

Here, there is no **record-based** evidence to indicate that Appellant was unaware of the consequences of his plea, or that he was misled or harmed by the failure of the trial court to fully and completely admonish him or secure written waivers. Mr. Reed did acknowledge on the record that he desired to enter a plea

16

of guilty, and was doing so because he was guilty and for no other reason. (RR 12, Pg. 15)

After careful analysis and consideration of the transcript of the trial court's admonishments, Appellate counsel can find that **the record** demonstrates no harm was caused by deficiencies or challenges to the voluntariness of the original guilty plea. It is Appellate counsel's position that harm cannot be demonstrated, on the record pursuant to Article 26.13 of the Texas Code of Criminal Procedure.

After accepting Appellant's original plea, the jury sentenced the Appellant to serve 75 years in the Texas Department of Criminal Justice and a fine of $10,000 for the crime of murder. (RR Vol. **12,** Pg. 106).

After complete examination of the entire record counsel can find no meritorious record-based challenges to the underlying original plea or the punishment assessed at that hearing. For these reasons, counsel believes any appeal in the instant case would be frivolous and without merit.

Accordingly, based on the entire record as presented to this court, Appellant can demonstrate no harm regarding any complaint about the underlying guilty plea or the sentence imposed herein. Although Appellant may disagree with the sentence of the trial court, there is no legal, record-based,

reason to reverse or remand.

## PRAYER

Wherefore, premises considered, Appellant counsel respectfully requests

that his motion to withdraw be granted

Respectfully submitted,

The Law Office of G.J. Smith, Sr., PLLC
P. O. Box 200395
Arlington, Texas 76006
Telephone:   (817) 635-3100
Fax:            (817) 635-3104

/s/GERALD J. SMITH, SR.
Gerald J. Smith, Sr.
State Bar No. 24039316

ATTORNEY FOR APPELLANT

## CERTIFICATE OF COMPLIANCE

I certify that this brief contains 3634 words according to the computer program used to prepare the document.

/s/GERALD J. SMITH, SR.
Gerald J. Smith, Sr.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served on all counsel of record and all pro se litigants by transmitting a true copy of same to such persons via first class mail, properly addressed, or via fax pursuant to the TEXAS RULES OF APPELLATE PROCEDURE and TEXAS RULES OF CIVIL PROCEDURE on this date, September 12, 2017.

/s/ Gerald J. Smith, Sr.
Gerald J. Smith, Sr.