ACCEPTED
13-15-00252-CR
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
7/24/2015 3:54:08 PM
CECILE FOY GSANGER
CLERK

## CAUSE NO. 13-15-00252-CR

IN THE COURT OF APPEALS
FOR THE
THIRTEENTH JUDICIAL DISTRICT OF TEXAS
AT CORPUS CHRISTI

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
7/24/2015 3:54:08 PM
CECILE FOY GSANGER
Clerk

**GUADALUPE PACHECO,**

APPELLANT,

**VS.**

**THE STATE OF TEXAS,**

APPELLEE.

On Appeal in Cause No. 14-10-28,220 -A in the
377th Judicial District Court of Victoria County, Texas
Hon. Elí E. Garza, Judge Presiding

## ANDERS BRIEF

Luis A. Martinez
Bar No. 24010213
P.O. Box 410
Victoria, Texas 77902
(361) 676-2750 telephone
(361) 575-8454 telefax
Email:
   Lamvictoriacounty@gmail.com

**ATTORNEY FOR APPELLANT**
**GUADALUPE PACHECO**

July 24, 2015

## ORAL ARGUMENT NOT REQUESTED

## IDENTITY OF PARTIES AND COUNSEL

Appellant submits the names and addresses of all interested parties and attorneys:

Parties

**GUADALUPE PACHECO**
TDCJ #01988236
Texas Department of Criminal Justice
Byrd Unit
21 FM 247
Huntsville, Texas 77320

**STATE OF TEXAS**
**c/o THE HON. STEPHEN B. TYLER**
205 N. Bridge, Suite 301
Victoria, Texas 77901

**Attorneys**:

**THE HON. JAMES BEELER**
Attorney for Appellant (At Trial)
121 E Harbor Drive East
Port Lavaca, Texas 77979

**THE HON. LUIS A. MARTINEZ**
Attorney for Appellant (On Appeal)
P.O. Box 410
Victoria, Texas 77902-0410

**THE HON. JOHNA M. STALLINGS** (At Trial)
**THE HON. VERONICA SANDERS** (At Trial)
**THE HON. BRENDAN W. GUY** (On Appeal)
Attorneys for the State
Victoria County District Attorney's Office
205 N. Bridge, Suite 301
Victoria, Texas 77901

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL…………………………………ii.

TABLE OF CONTENTS……………………………………………. iii.

LIST OF AUTHORITIES……………………………………………iv.

CERTIFICATE OF COUNSEL…………………………………………v.

I.     RECORD BEFORE COURT……………………………………2

II.   STATEMENT OF CASE…………………………………………..3

III.  ISSUES PRESENTED……………..…..……………………4

IV.  STATEMENT OF FACTS…..…………………………………..5

V.    SUMMARY OF THE ARGUMENT…………………………… 19

VI.  ARGUMENT AND AUTHORITIES …………..………………19

     ISSUE NUMBER ONE:

     THERE ARE NO ERRORS THAT WOULD RESULT IN REVERSAL OF THE ORDER OF THE TRIAL COURT…………….………………………19

VI.  PRAYER AND REQUEST TO WITHDRAW………………..........20

VIII. CERTIFICATE OF SERVICE……………………………… …21

IX. CERTIFICATE OF COMPLIANCE……………………………22

# LIST OF AUTHORITIES

**Cases:**       **Page**

*Anders v. California*, 386 U.S. 738 (1967)…………………………………………….20

*Hawkins v. State*, 112 S.W.3d 340, 343-44

       ( Tex.App.–Corpus Christi 2003, no pet.)………………. ……………….19

*In re: Schulman*, 252 S.W.3d 403, 407 n.9 (Tex.Crim.App. 2008)………………19

*Stafford v. State*, 813 S.W.2d 503-510, n. 3 (Tex.Crim.App. 1991) …………......19

*Williams v. State*, 976 S.W.2d 871 (Tex. App.—Corpus Christi 1998)…………. 20


**Rules and Statutes:**

TEX. PEN. CODE§22.01(a)(2)……………………………………………………….3

TEX. PEN. CODE §22.02(B)(1)……………………………………. …………… …3

TEX. PEN. CODE §38.04(b)(2)……………………………………………………….3

## CERTIFICATE OF COUNSEL

I, Luis A. Martinez, court-appointed counsel for Appellant, GUADLUPE PACHECO, for purposes of this appeal, certify that I have diligently searched the Reporter's Record and Clerk's Record in Trial Court Cause Number 14-10-28,220 -A , researched the law applicable to the facts and issues presented, if any, and it is my professional opinion that no reversible error is reflected by the record.

I am of the professional opinion this appeal is without merit and frivolous, and in compliance with applicable law pertaining to appeals of this type, I have set forth all points which might arguably support an appeal, request permission to withdraw, and acknowledge that I have forwarded a copy of this brief to Appellant, GUADALUPE PACHECO, to his last known address, for the purposes of raising any points he chooses, and filing a *pro se* brief.

**By this certification, and by separate letter, Appellant is being informed that he may file a *pro se* appellate brief if he chooses, and any *pro se* brief must be filed with this Court within 30 days of the filing of this *Anders* brief. Appellant is further advised that he may request further time to file his *pro se* brief, and such request must be made in writing and filed with the 13th Court of Appeals at: The Thirteenth Court of Appeals, Corpus Christi Division, 901 Leopard, Nueces County Courthouse, 10th Floor, Corpus Christi, Texas 78401.**

v

CAUSE NO. 13-15-00252-CR

IN THE COURT OF APPEALS
FOR THE
THIRTEENTH JUDICIAL DISTRICT OF TEXAS
AT CORPUS CHRISTI

GUADALUPE PACHECO,

APPELLANT,

VS.

THE STATE OF TEXAS,

APPELLEE.

On Appeal in Cause No. 14-10-28, 220-A in the
377th Judicial District Court of Victoria County, Texas
Hon. Elí E. Garza, Judge Presiding

**ANDERS BRIEF**

TO THE HONORABLE COURT OF APPEALS:

Appellant, **GUADALUPE PACHECO,** by and through his court appointed counsel, Luis A. Martinez, respectfully submits this brief in appeal of the judgment and sentence of the Trial Court finding him guilty of Aggravated Assault with a Deadly Weapon and Evading Arrest and sentencing him to the Texas Department of Criminal Justice-Institutional Division.

1

This is an appeal from the 377ᵗʰ Judicial District Court of Victoria County, Texas, the Honorable Elí E. Garza, Judge Presiding in which the Appellant, **GUADALUPE PACHECO**, was the Defendant and the State of Texas was the Plaintiff. As required by the applicable rules, the parties will be called "Appellant" and the "State."

## I.

## <u>RECORD BEFORE COURT</u>

The Clerk's Record consists of one volume and citation to this record will be referenced in this brief by use of the abbreviation "CR" referring to the Clerk's Record and then the appropriate page number. For example, page 10 of the Clerk's Record shall be cited as CR-10.

The Reporter's Record furnished to Appellant consists of a total of six (6) volumes. Citation to the Reporter's Record will be referenced in this brief by use of the abbreviation "RR", followed by a roman numeral to indicate the volume, followed by the appropriate page number. For example, page 10 of the Reporter's Record, volume two, shall be cited as RR-II-10.

## II.

## <u>STATEMENT OF THE CASE</u>

Appellant wishes to appeal the trial court's judgment and sentence convicting him of two counts of Aggravated Assault with a Deadly Weapon and Evading Arrest and sentencing him to twenty years and ten years, sentences, fines and court costs.

Appellant was charged in a multi-count indictment with three counts: Count 1, Aggravated Assault pursuant to TEX. PEN. CODE §22.02(B)(1)[1]; Count 2 Aggravated Assault pursuant to TEX. PEN. CODE §22.02(B)(1); and Count 3 Evading Arrest Detention with Vehicle pursuant to TEX. PEN. CODE §38.04(b)(2). Said indictment was filed on, or about, October 2, 2014. [CR-5-6]. Appellant waived arraignment in writing on, or about, October 28, 2014. [CR-13].

A Plea Memorandum was executed and filed by Appellant on, or about, February 4, 2015. [CR-20]. On the same day, Appellant was admonished by the Court and pled guilty to Count 1 and 3 of the indictment. The State abandoned Count 2 of the indictment. [RR-III-7]. A sentencing hearing was set for February 19, 2015.

---

[1] Prior to sentencing, the Trial Court pointed out that, although the indictment indicated that Count 2 was a first degree felony, the actual language of the indictment charged a Second Degree Felony. Defendant agreed and persisted in his plea of guilt. The Trial Court ultimately convicted and sentenced Appellant on Count 1 of the second degree felony of Aggravated Assault with a Deadly Weapon pursuant to TEX. PEN. CODE §22.02(a)(2). [CR-27; RR-IV-116].

3

Appellant's sentencing hearing was commenced on, or about February 19, 2015. The sentencing hearing finished on February 20, 2015. After the presentation of evidence and argument by the State and Appellant, the Trial Court, as to Count 1, sentenced Appellant to (20) years in the Institutional Division of the Texas Department of Criminal Justice, a $10,000.00 fine and court costs. [CR-27-30]. As to Count 2, the Trial Court sentenced Appellant to (10) years in the Institutional Division of the Texas Department of Criminal Justice, a $10,000.00 fine and court costs. [CR-31-34].

The Trial Court certified that Appellant's case was not a plea-bargain case and that he had the right of appeal. [CR-26].

A Motion for New Trial was filed on, or about, March 20, 2015. [CR-36].

A Notice of Appeal was timely filed on, or about, May 20, 2015. [CR-46].

**III.**

**ISSUES PRESENTED**

**ISSUE NUMBER ONE:**

**THERE ARE NO ERRORS THAT WOULD RESULT IN REVERSAL OF THE ORDER OF THE TRIAL COURT.**

4

## STATEMENT OF THE FACTS

### *The Plea Hearing*

A plea hearing was held on, or about, February 4, 2015.  Prior to pleading "Guilty," Appellant waived his right to have the indictment read aloud.  [RR-III-4]. The Trial Court admonished Appellant as to the punishment range for a first degree felony as well as a third degree felony.  [RR-III-4-5].

The Trial Court next inquired of the Appellant of the Plea Bargain Memorandum.  Appellant identified his signature on the Plea Bargain Memorandum.  [RR-III-5]. Appellant indicated that he understood that he was giving up the right to a trial by jury and the right to confront and cross-examine witnesses.  [RR-III-5].  Appellant indicated that he understood he was giving up his right against self-incrimination and agreeing to be called as a witness during the plea hearing.  [RR-III-6].  The Trial Court confirmed that Appellant was waiving his rights both "freely and voluntarily."  [RR-III-6].

Trial Counsel for Appellant indicated to the Trial Court that he felt his client was "competent to stand trial," and that "he was waiving his rights freely and voluntarily."  [RR-III-6].

The Trial Court next confirmed with the State and Appellant that there was no plea bargain in the case.  [RR-III-7].

Appellant pled guilty to Court 1 and Count 3 of the indictment, respectively, Aggravated Assault and Evading Detention with a Vehicle. Count 2 of the indictment was abandoned by the State. [RR-III-7].

The Trial Court confirmed with Appellant that no one had promised Appellant anything for his plea and that he was entering a plea of guilty both freely and voluntarily. [RR-III-8]. Appellant's trial counsel indicated to the Trial Court that he was confident that his client was entering the pleas of guilty freely and voluntarily. [RR-III-8].

The Trial Court next admonished Appellant that he had a right to a jury trial and that he could request that a jury assess punishment in his case; Appellant indicated that he understood. [RR-III-8]. Appellant confirmed that he was asking the Court to assess punishment. [RR-III-8].

Appellant stipulated to the facts of Count 1 and Count 3. [RR-III-10]. Appellant's attorney joined in the stipulation. [RR-III-11].

The Trial Court found Appellant to be competent, sufficient evidence upon his plea to find Appellant guilty, accepted both guilty pleas and reset both cases for a punishment hearing. The Trial Court also indicated that it would consider Appellant's motion for deferred adjudication. [RR-III-13].

A punishment hearing was set for February 19, 2015. [RR-III-9].

*The Punishment Hearing of February 19-20, 2015.*

A punishment hearing was called up on February 19, 2015. [RR-IV-5]. Prior to the presentation of witnesses, the State requested, and the Trial Court took, judicial notice of the PSIR. The Rule was invoked by the State. [RR-IV-7]. The State also offered State's Exhibits 1-20 which were admitted into evidence. [RR-IV-10].

## Testimony of Christine Sanchez

Christine Sanchez was first called by the State. Ms. Sanchez testified that she used to date Appellant, about seven years ago. [RR-IV-10]. She identified Appellant in open court. [RR-IV-11].

Ms. Sanchez was asked to direct her attention to May 15, 2011. Ms. Sanchez was at her sister's house that day when Appellant came over. [RR-IV-11]. She testified that Appellant was angry with her because she did not want to "get back with him." She said he had a pipe. [RR-IV-12]. She further explained that Appellant wanted her to pick Appellant up, and when she didn't, he walked to Ms. Sanchez's sister's house. She recounted for the Trial Court that Appellant threatened to kill her if she didn't pick him up. [RR-IV-12]. She also testified that Appellant had gloves on and said he would shoot her if she did not take him where he wanted to go. Ms. Sanchez further indicated that she was outside with Appellant, her sister and her niece. [RR-IV-13].

7

Ms. Sanchez said that when Appellant threatened to kill her, her sister kept Appellant from swinging the pipe he had. [RR-IV-13]. She testified that Appellant swung a metal pipe at her and hit her car with the pipe. [RR-IV-14, 16]. She identified the car that Appellant hit with the pipe in State's Exhibit 1-4. [RR-IV-14-15]. She also recounted that her niece had protected her while Appellant had swung the pipe at her. [RR-IV-21].

Ms. Sanchez said that she moved more than once because Appellant threatened to kill her or shoot her. [RR-IV-15].

During cross-examination, she admitted that Appellant did not bring the pipe with him to Ms. Sanchez's sister's house. [RR-IV-19].

The State asked Ms. Sanchez if Appellant was calm or violent when he was drinking. She responded, "He was violent." [RR-IV-20]. She agreed with the State that Appellant was "a violent drunk." [RR-IV-20]. Ms. Sanchez agreed that, when drinking, Appellant would get angry, talk out loud, wanted to fight, and would break things. [RR-IV-21].

When asked by the State how she would feel about Appellant being sentenced to probation rather than jail, she responded, "I would still fear for my life." [RR-IV-22].

Ms. Sanchez also admitted that she had not had contact with Appellant since May 15, 2011. [RR-IV-24].

## Testimony of Zachary Caldwell

Officer Zachary Caldwell of the Cy-Fairbanks I.S.D. Police Department was next called by the State. Officer Caldwell was formerly employed by the Victoria Police Department. [RR-IV-27].

On August 7, 2005, Officer Caldwell came into contact with Appellant at a Victoria apartment complex while responding to a call for a possible assault in progress. [RR-IV-28]. Officer Caldwell spoke to the alleged victim, Cynthia Moreno, who advised him that she and Appellant got into an altercation, during which Appellant struck her on the side of the face with a stick. [RR-IV-29]. Officer Caldwell stated that, "she had visible injuries." [RR-IV-29]. Ms. Moreno further recounted to Officer Caldwell that Appellant had pulled her to the ground and started kicking her and stomping her in the face causing pain and injury. [RR-IV-29].

Officer Caldwell was shown State's Exhibits 15-17, which he identified as photographs of Ms. Moreno taken shortly after he arrived on the scene. [RR-IV-30].

Officer Caldwell searched the scene and found Appellant at the corner of the apartment complex. When Officer Caldwell came upon Appellant, he was urinating; he also documented in his report that Appellant had the odor of alcoholic beverage on his breath and bloodshot eyes. [RR-IV-34]. Appellant appeared to be

9

intoxicated. [RR-IV-35]. Appellant was arrested and transported to the Victoria County Jail. While at the jail, Officer Caldwell overheard Appellant talking to another inmate, wherein Appellant stated that he had struck his wife or girlfriend in the face, breaking her nose. [RR-IV-31].

Caldwell also testified that he would have charged the incident as an aggravated assault because a deadly weapon was used. Officer Caldwell admitted that no weapon was ultimately found. [RR-IV-36]. According to Officer Caldwell, Appellant was subsequently convicted of Assault Causing Bodily Injury. [RR-IV-33].

## Testimony of Veronica Sanchez

Veronica Sanchez next testified on behalf of the State. [RR-IV-38]. She stated that Appellant was "going out with her aunt [Christine Sanchez]." [RR-IV-38]. She identified Appellant in open court. [RR-IV-39].

Ms. Sanchez recalled being at her mother's house on May 15, 2011, when Appellant showed up at the house. [RR-IV-39]. She testified that Appellant wanted to talk to her aunt about "getting back with him." Ms. Sanchez said that she [her aunt] did not want to talk to him, but agreed to meet him at her house. Her aunt asked her to go with her. They left the house in her aunt's car, but Appellant started to say that he had a gun and he was going to shoot her. Ms. Sanchez, who was driving her aunt's car, turned around and went back to her mother's house.

10

[RR-IV-40]. Ms. Sanchez agreed that her aunt seemed nervous about being around Appellant. [RR-IV-40].

When Ms. Sanchez arrived at her mother's home, she told her mother to call the police. She further testified that Appellant found a pipe and came around the car. Ms. Sanchez then jumped in front of her aunt and told Appellant that if "he was going to do anything to her, he had to go through me first." [RR-IV-41]. Appellant backed off, starting telling he aunt "a whole bunch of stuff," and started hitting the car with the pipe. [RR-IV-42]. Ms. Sanchez identified State's Exhibits 1-4 as photographs of her aunt's car and State's Exhibit 5 as the pipe Appellant grabbed out of her mother's yard. [RR-IV-43].

Following the May 15, 2011, incident, Ms. Sanchez testified that her aunt was scared and did not want to go anywhere for fear of seeing Appellant. [RR-IV-44].

Ms. Sanchez also revealed at the hearing that her aunt, Christine Sanchez, is disabled due to severe rheumatoid arthritis. [RR-IV-49-50].

### Testimony of Karla Melancon

Karla Melancon next testified for the State. She has known Appellant since they were kids. Later in life they reconnected. [RR-IV-52]. After they met up again they started dating. [RR-IV-53]. They moved in together after a few months. [RR-IV-54].

11

She and Appellant would argue with the children around. [RR-VI-54]. Ms. Melancon testified that Appellant was verbally abusive. [RR-VI-54]. She further testified that Appellant drank a lot and was "mean and violent," as in shoving and pushing her. [RR-VI-56].

On once occasion in 2011, over a meal, Ms. Melancon testified that Appellant was drunk and angry, being verbally abusive and threw a plate across the room. [RR-VI-56]. She stated, "any time he drank, we ended up having problems." [RR-VI-57].

On another occasion, Appellant was arguing on the phone with someone, and he made Ms. Melancon pull over to a bar on Ben Jordan Street. He got out and then got back in the car. When he got back in the vehicle, he was angry and directed his anger at her. [RR-IV-57].

As they were in the vehicle in an apartment complex, she told Appellant not to talk to her in the way that he was. He was angry and left the vehicle. Afterwards, he called her asking her to pick him up; she refused. [RR-IV-58]. She returned to his mother's house. Appellant showed up at his mother's house and started banging on the doors and windows to let him back in. Ms. Melancon testified, "He was enraged….Real pumped up, like with an evil look. I never seen someone look like that ever." [RR-IV-58]. Ms. Melancon left. [RR-VI-58].

Ms. Melancon testified that there were numerous incidents involving

physical abuse. [RR-IV-59]. After her son, Carlos, was born, she, Carlos and Appellant were traveling in a car and arguing when Appellant closed his fist and hit her on the face. Appellant hit her a few more times and he said he was going to kill them all and started driving towards a post. [RR-VI-60]. He picked up speed, so Ms. Melancon grabbed the steering wheel and caused the car to veer. [RR-VI-60]. She testified he was mad and continued to hit her. [RR-VI-60]. When she threw the vehicle into park, Appellant said she was stupid and was going to screw up the car. [RR-VI-61]. He then started to choke her with both hands. [RR-IV-62]. He then bit her on the cheek. [RR-IV-62].

Ms. Melancon next testified that she had purchased a vehicle so that Appellant could do lawn work. [RR-IV-66]. She testified that Appellant would loan the vehicle to other people. [RR-IV-67]. On June 7, 2014, Appellant had loaned the truck to other people. She had planned to go over to her mother's house to eat. Appellant informed her that he had a job out of town and he was going to take a look at what the job entailed. [RR-IV-68]. She was left at home without a phone nor without the truck she had purchased. She testified that Appellant returned in the early evening with a 12-pack under his arm when he entered the kitchen. [RR-IV-70]. She expressed her anger at him and he went into a rage. He hit her with his fists in the face and chest. Her two-year old son was on the couch. The fight moved towards a kitchen counter where Appellant grabbed a knife, held

13

it above her head, came down and began to saw back and forth. [RR-IV-74]. Her hand was cut when she grabbed ahold of the knife. They tussled with the knife and he let go. [RR-IV-77].

She stated that she next went to her son Carlos because he was crying; she tried to calm him. She confirmed that Appellant continued to attack her while she was holding her son. [RR-IV-78]. She was shown and identified photographs of the injuries sustained that evening. [RR-IV-78].

Ms. Melancon also confirmed that in addition to hands, fists and a knife, Appellant hit her in the back of the head with a wine rack. [RR-IV-80]. She said that she did not immediately feel pain, but that it began to throb where she had been hit with the wine rack. [RR-IV-81].

Ms. Melancon pleaded throughout the incident to let her get herself together and they would go to her mother's house like nothing had happened. [RR-IV-82]. She went to the bathroom, where she put her hair up and prepared a bag for her son. She stated that her hair was saturated with blood. [RR-IV-82]. She told Appellant that there was a hole in the back of her head, but that Appellant did not seem to care. [RR-IV-82]. She confirmed with the State that she felt her life was threatened. [RR-IV-84].

Appellant, Ms. Sanchez and Carlos went to her mother's house. When they arrived, Appellant told Ms. Melancon that he was only going to allow her to get

14

out of the car; when she exited the vehicle, Appellant locked all the doors to the car. [RR-IV-84]. Ms. Melancon's son was still in the car. [RR-IV-84]. Carlos was eventually removed from the car. [RR-IV-85].

Ms. Melancon was asked how should we feel if Appellant were given probation and he was able to be out on the streets; Ms. Melancon replied, "I wouldn't feel safe." She also agreed that it was more appropriate that Appellant go to prison or jail for some time. [RR-IV-90]. She testified that it would not be in her best interest that Appellant was placed on deferred adjudication probation. [RR-IV-91].

### Testimony of Rosa Barragon

Rosa Barragon, Karla Melancon's mother, testified next for the State. [RR-IV-106]. She testified that in June 2014, she and her daughter were supposed to get together to eat. Her daughter, Appellant and Carlos arrived late. When she went out to the car she testified that Appellant told her, "that he was going to drive and maybe end up killing himself, with the baby.... that he was going to crash, or whatever—He was going to have an accident. He didn't want to leave the baby." [RR-IV-106].

Ms. Barragon later realized that her daughter was injured and her daughter ended up going to the hospital. [RR-IV-107].

Ms. Barragon also identified Appellant in open court. [RR-IV-108]. Ms.

Barragon agreed that she believed Appellant to be a dangerous person. [RR-IV-114].

## Testimony of Officer Adam Garcia

Officer Adam Garcia of the Victoria Police Department, testified next for the State. [RR-IV-117]. On June 7, 2014, Officer Garcia was dispatched to a disturbance. [RR-IV-118]. When he arrived at the scene, family or residents pointed to the vehicle Appellant was in. As Officer Garcia was walking toward the car, it drove off.

Appellant was eventually stopped. When Appellant was contacted by officers, he was hostile, verbally pushing away and not complying with officer commands. Appellant was yelling and cursing. [RR-IV-120]. Eventually, Appellant became compliant, was secured in handcuffs, searched and read his Miranda rights. [RR-IV-120].

## Testimony of Robert Dial

Officer Robert Dial of the Victoria Police Department was next called to testify on behalf of the State. On November 20, 2010, Officer Dial was on patrol and came into contact with Appellant. A caller had advised that while Appellant was driving a maroon Grand Am, Appellant struck the caller's fence and left the scene and drove to his own nearby residence. The caller believed that Appellant was intoxicated and still in his vehicle. [RR-IV-129-130].

16

Officer Dial walked across the street and made contact with Appellant. Appellant was in the passenger's side of the vehicle and had an entire bottle between his legs. [RR-IV-130.] Appellant was asked to exit the vehicle. When he did, Appellant was unsteady on his feet and his eyes were glassy, red and bloodshot. [RR-IV-130]. Appellant denied any knowledge of running into the fence. [RR-IV-130]. Appellant was arrested for DWI. [RR-IV-130].

**Testimony of Gregory Wyatt**

Gregory Wyatt, pastor of the Palestine Baptist Church, was called to testify on Appellant's behalf. [RR-V-6]. Appellant attends his church. [RR-IV-6]. Pastor Wyatt had counseled with Appellant and Ms. Melancon. [RR-IV-6]. Pastor Wyatt recommended to the Trial Court that Appellant needed rehabilitation for alcohol abuse. [RR-V-8].

Pastor Wyatt also testified that Appellant had a serious situation with diabetes. The church has a nursing board that tested Appellant several times after which he was sent to the hospital. [RR-V-8-9].

On two occasions, Pastor Wyatt counseled Appellant in jail. [RR-V-9]. During his visits with Appellant formed the opinion that Appellant has a high regard for the safety and welfare of his child. [RR-V-12].

**Testimony of Appellant**

Prior to testifying, Appellant was admonished as to his right against self-

17

incrimination. [RR-V-21]. Appellant indicated that he wished to waive his right against self-incrimination and was doing so freely and voluntarily. [RR-V-22].

Appellant confirmed that he is an alcoholic, a diabetic and suffers from mood swings. [RR-V-23]. Appellant indicated that he wanted help for those issues. [RR-V-24].

During cross-examination, Appellant indicated that he had violated probation in 2005. [RR-V-24]. Appellant also recalled assaulting a police officer in 1992. Appellant further recalled making threats to kill others in 1991. [RR-V-26]. Appellant recalled assaulting Cindy Moreno. [RR-V-27]. Appellant also recalled verbally threatening Christine Sanchez. [RR-V-28].

Appellant also recalled slapping Karla when he accused her of cheating or flirting, more than one time. [RR-V-29]. He also recalled threatening her. [RR-V-30].

He agreed that there were times when he drank that he felt it was unsafe to go home. [RR-V-32].

Appellant confirmed that he had been convicted of driving while intoxicated. [RR-V-32]. Appellant confirmed that he had been to jail and had not asked if there was an opportunity to receive treatment. [RR-V-33]. Appellant testified that he was familiar with AA, but had not gone. [RR-V-33]. Appellant agreed that he needed help for his alcohol problem. [RR-V-33]. Appellant testified that he had

18

sought help from Gulf Bend who set him up with Texas Rehabilitation. He also spoke with a psychiatrist. [RR-V-34].

## V.

## SUMMARY OF THE ARGUMENT

The undersigned has diligently reviewed the record, both Clerk's and Reporter's Record. After such review, it is the undersigned's opinion that there are no errors that would result in the reversal of the convictions and sentences in this matter and, as such, has filed this *Anders* Brief.

## VI.

## ARGUMENT AND AUTHORITIES

**ISSUE NUMBER ONE:**

**There are no errors that would result in reversal of the judgment and sentence of the trial court.**

In accordance with *In re: Schulman*, the undersigned has provided record references to the facts and proceedings in this matter. *See In re: Schulman*, 252 S.W.3d 403, 407 n.9 (Tex.Crim.App. 2008) see also *Hawkins v. State*, 112 S.W.3d 340, 343-44( Tex.App.–Corpus Christi 2003, no pet.) *Stafford v. State*, 813 S.W.2d 503-510, n. 3 (Tex.Crim.App. 1991). After the review of the record in this case, it is the undersigned's belief that there are no reasonably arguable factual or evidentiary issues that would result in the reversal of the judgment and sentence in

19

this matter.

## VII.

## <u>PRAYER AND REQUEST TO WITHDRAW</u>

In accordance with the principles set forth in *Anders v. California*, 386 U.S. 738 (1967); *Williams v. State*, 976 S.W.2d 871 (Tex.App.–Corpus Christi 1998), Counsel believes there are no reasonably arguable factual or evidentiary issues disclosed by the record in this case which would amount to reversible error.

A Defendant's right to assistance of counsel does not include the right to have an attorney urge frivolous or non-meritorious claims. As such, Counsel requests this Court allow him to withdraw from further representation of Appellant.

Counsel requests that this Court undertake a full examination of the trial court proceedings and decide whether the case is in fact wholly frivolous and without merit, and allow Appellant sufficient time to review the record, research any point he wishes to raise, and submit his own brief.

Respectfully submitted,

LUIS A. MARTINEZ, P.C.
P.O. Box 410
Victoria, Texas 77902-0410
(361) 676-2750 (Telephone)
(361) 575-8454 (Telecopier)
Email:
Lamvictoriacounty@gmail.com

20

BY: _____

Luis A. Martinez
State Bar No. 24010213

ATTORNEY FOR APPELLANT
**GUADALUPE PACHECO**

## VIII.

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true copy of the foregoing document was served upon the Honorable Brendan W. Guy, Victoria County Criminal District Attorney, and upon the Appellant, Guadalupe Pacheco, in the manner indicated below, on this 24th day of July, 2015, pursuant to the Texas Rules of Appellate Procedure.

_____

Luis A. Martinez

*Via Electronic Mail, bguy@vctx.org*
Mr. Brendon W. Guy
Asst. District Attorney
Victoria Co. Dist. Atty's Office
205 N. Bridge, Suite 301
Victoria, Texas  77901
*Attorney for the State on Appeal*

21

*Via Certified Mail, RRR*
Mr. Guadalupe Pacheco
TDCJ#: 01988236
Texas Dept. Crim. Justice-ID
Byrd Unit
21 FM 247
Huntsville, Texas  77230
*Appellant*

## IX.

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the following document utilizes 14 point font for text and 12 point font for footnotes.  I further certify that the word count in this document for those matters not excluded by Rule 9.4 is less than the minimum allowed for an appellant's brief and is 3,389 words.

_____
Luis A. Martinez

22