ACCEPTED
14-15-00927-CV
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
12/31/2015 4:51:49 PM
CHRISTOPHER PRINE
CLERK

NO.  14-15-00926-CV
NO.  14-15-00927-CV

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
12/31/2015 4:51:49 PM
CHRISTOPHER A. PRINE
Clerk

## IN THE COURT OF APPEALS
## FOR THE FOURTEENTH JUDICIAL DISTRICT
## OF TEXAS AT HOUSTON

## IN THE MATTER OF T.H.

**T.H., Appellant**

**v.**

**THE STATE OF TEXAS, Appellee**

## APPEALED FROM THE 315TH
## DISTRICT COURT OF HARRIS COUNTY, TEXAS

**Trial Cause Nos. 2015-02522J & 2014-02523J**

## *ANDERS* BRIEF OF APPELLANT T.H.

**WILLIAM M. THURSLAND**
**TBN 20016200**
**440 Louisiana St., Ste. 1130**
**Houston, TX 77002**
**713-655-0200 x 105; Fax: (713) 655-9035**
**Email: wmthursland@hotmail.com**

**ATTORNEY FOR APPELLANT, T.H.**

**ORAL ARGUMENT IS REQUESTED**

## IDENTIFICATION OF PARTIES AND COUNSEL

The names of all parties and counsel to this appeal are:

<u>M.C., Appellant</u>:

At Trial:                                          On Appeal:

Ann Campbell                                William M. Thursland
Attorney At Law                            Attorney At Law
TBN 20016200                             TBN: 00787193
440 Louisiana St., Ste. 1130        10924 Grant Rd., Ste. 517
Houston, TX 77002                      Houston, TX 77070
Tel: 713-655-0200; x 105            Tel: 713-655-0200 x 105
Fax: 713-655-9530                       Fax: 713-655-9035

<u>The State of Texas, Appellee</u>:

At Trial:                                          On Appeal:

Sarah Bruckmiller                          Alan Curry
Assistant District Attorney            Assistant District Attorney
TBN: 24051359                            TBN: Unknown
1200 Congress, 2nd Fl.                 1201 Franklin,
Houston, TX 77002                      Houston, TX 77002
Tel: 713-755-5800                        Tel: 713-755-5800
Fax: 713-713-5809                        Fax: 713-755-5809

## REQUEST FOR ORAL ARGUMENT

Appellant does not request oral argument.

## RECORD REFERENCES

<u>Clerk's Record</u>**:**

The Clerk's Record in each case consists of one (1) volume. It is referred to herein as CR followed by the volume and page number(s).

i

Reporter's Record**:**

   The court reporter's trial record consists of three (3) volumes. The hearing testimony is found in the second volume and is referred to as (RR) followed by the page and line number(s). The exhibits are found in the third volume and are identified by the offering party and exhibit number.

Statutory Citation References:

   Unless otherwise indicated, all statutory references made herein refer to the Texas Family Code.

## **TABLE OF CONTENTS**

IDENTIFICATION OF PARTIES AND COUNSEL      i

REQUEST FOR ORAL ARGUMENT      i

RECORD REFERENCES      i

TABLE OF CONTENTS      ii

TABLE OF AUTHORITIES      iii

STATEMENT OF THE CASE      1

ISSUE PRESENTED:      2

     ARE THERE ANY NON-FRIVOLOUS GROUNDS TO
     ASSERT ON APPEAL

STATEMENT OF FACTS      2

SUMMARY OF ARGUMENT      14

ARGUMENT      15

I. *Anders* Procedures & requirements      15

II. Waiver of Juvenile Jurisdiction      16

III. Conclusion & Prayer      23

CERTIFICTE OF COMPLIANCE      24

CERTIFICATE OF SERVICE      24

## TABLE OF AUTHORITIES

### Federal Cases

*Anders v. California,* 386 U.S. 738 (1967)      14, 15, 16

### State Cases

*Bledsoe v. State,* 178 S.W.3d 824 (Tex. Crim. App. 2005)      16

*Guerrero v. State*, No. 14-13-00101-CR, 2014 WL 7345987      23
(Tex. App. – Houston [14th Dist.] Dec. 23, 2014, no pet.)(memo.op.)

*In re D.A.S.,* 973 S.W.2d 296 (Tex. 1998)      14

*Moon v. State.,* 451 S.W.3d 28 (Tex. Crim. App. 2014)      14, 15, 22

*Stafford v. State,* 813 S.W.2d 503 (Tex. Crim. App, 1991)      16

### Statutes

Tex. Family Code Ann. § 51.02(2)(a)      19

Tex. Family Code Ann. § 54.02(a)(3)      16

Tex. Family Code Ann. § 54.02(f)      17, 18, 22

Tex. Family Code Ann. § 54.02(h)      17

Tex. Family Code Ann. § 54.04(1)      21

Tex. Family Code Ann. § 54.04(d)(2)      22

Tex. Human resources Code § 245.1151      22

No. 14-15-00926-CV
No. 14-15-00927-CV

_____

IN THE COURT OF APPEALS
FOR THE FOURTEENTH JUDICIAL DISTRICT
OF TEXAS AT HOUSTON

_____

IN THE MATTER OF T.H.

_____

T.H., Appellant

v.

THE STATE OF TEXAS, Appellee

_____

On Appeal from the 315th District Court
Harris County, Texas
Trial Court Cause Nos. 2015-02522J & 2015-02523J

_____

TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:

Appellant, T.H., respectfully submits his original brief in the above styled and number appeal.

**STATEMENT OF THE CASE**

On April 22, 2015, the State of Texas filed the *Original Petition* in cause numbers 2015-02522J and 2015-02523J wherein it alleged that on April 4, 2015 appellant committed the first-degree felony offense of aggravated robbery against

1

Clarence Hayes and Ghulam Ali, respectively.  (CR 3-4)

On or about June 1, 2015, the State filed its motion requesting that the juvenile district court waive its jurisdiction and transfer the cases to the criminal district court. (CR 5-6)

At the conclusion of the certification hearing, the trial court granted the State's motion.  The "Order to Waive Jurisdiction" in both cases was signed on October 13, 2015.   (CR 8-12)

Appellant filed his notice of appeal on October 30, 2015. (CR 16)

## ISSUE PRESENTED

ARE THERE ANY NON-FRIVOLOUS GROUNDS TO
ASSERT ON APPEAL

## STATEMENT OF FACTS

The certification hearing was heard on September 11, 2015.  The State called six witnesses and the appellant one.  Prior to calling its first witness, the State offered the following six exhibits that were admitted into evidence without objection:

1.  A Stipulation of Date of Birth establishing that T.H. was born on June 2, 1998.

2 & 3.  The returns of service regarding the State's certification motions in both cause numbers reflecting that T.H. was served with citation on June 4, 2015.

4 & 5.  The returns of service regarding the State's certification motions in

2

both cause numbers reflecting that T.H.'s mother was served with citation on June 9, 2015.

　　6.　The Court Report Information Summary ("CRIS").

(RR p. 5-6)

Psychologist Tellez:

Alexandra Tellez is a psychologist with the Harris County Juvenile Probation Department who was requested to do an evaluation on appellant in preparation for the certification hearing. On July 2, 2015, she met with T.H., and his attorney. At some point, psychiatrist Linda Wittig, was also present. Appellant refused to "do the interview after [Tellez] went over the limits of confidentiality." Tellez estimates she met with T,H, for about 15 minutes. She attempted to make him more comfortable by asking questions about his childhood but he "just refused from the onset of the interview." She does not recall him saying anything and there was no indication that he did not understand her questions. (RR p. 7-8 & p. 9; L. 1-12)

In addition to Tellez, appellant's attorney and Wittig made separate attempts to engage T.H. but they were also unsuccessful. (RR, p. 9-10)

Officer Arolfo:

Wendell Arolfo is a Houston Police Department ("HPD") officer who is

3

assigned to the Southwest station. He investigates crimes against persons such as aggravated robberies. He was assigned to investigate a robbery that occurred around 10:30 on April 4, 2015 at a convenience store called A&K Food Store ("store"). There were two complainants; the store clerk, Gulam Ali ("Ali") and Clarence Hayes ("Hayes"). The store has video cameras "inside and out" which captured the robbery from "two different perspectives." (RR, p. 11-14)

Arolfo obtained copies of the videos that were admitted into evidence without objection as State's exhibit #7. The investigation revealed that T.H. entered the store wearing a red hoodie, with a black bag over his chest and black sweatpants. He jumps through the hole at the counter "where the clerk passes you money." As he jumps he pulls out a black revolver. Once he lands on the other side "he puts his face out" and aims the gun at Ali' head and demands money. As Ali complies with the demand, Hayes enters the store; appellant shoots twice and strikes Hayes in the leg. He then grabs the money and exits the store. (RR p. 15-16)

The second video shows T.H. firing two shoots at Hayes who entered the store "like he usually does" unaware that an armed robbery was occurring. State's exhibit # 8, a photo depicting the injury to Hayes' left thigh was admitted into evidence without objection. Arolfo explained that the bullet hit a quarter, which

4

generated enough heat to burn Hayes' skin. If the quarter weren't there, the bullet would have penetrated the leg and caused a worse injury. It appears T.H. at first was aiming for the chest but the bullet could have gone "anywhere." Arolfo found a fragment of the bullet in Hayes' boot. No casings were found because appellant used a revolver. (RR, p.19-21)

The patrol officers got a "good ID of the suspect" and a neighbor, Amanda Young, walked into the store and recognized T.H. in the surveillance video. Earlier in the day she saw him wearing the same clothing in the apartment complex. His face was unobstructed in the video. So HPD knew appellant's name but the patrol officers were unable to find him. At this point, Arolfo's team took over the investigation. On April 9, 2015, they showed a photo array to Ali who "immediately pointed to No. 5, [T.H.], and said that was him." The photo array was admitted into evidence without objection as State exhibit #9. (RR, p. 22- 26)

On April 10, 2015, Arolfo interviewed appellant's 19 year old sister, Ironisha, at the apartment complex where they both live across the street from the store. She remembered T.H. sitting on the couch wearing a red hoodie, black pants and twirling a gun before the robbery happened. She reported he is a member of the Early Boys gang and might be staying with an aunt "off 610 and Long Drive." She appeared nervous and frightened of her brother. She voluntarily spoke to the

5

police.  When shown the video, she immediately identified her brother and noted he was wearing the same clothing.  (RR p. 27-29)

Arolfo also interviewed Hayes who stated as he entered the store he saw a black male wearing a red hoodie behind the counter; pointing a pistol at him.  He knew he was shot because "he felt the burn in his leg and immediately ran out of the store."  (RR p. 30)

One of appellant's booking photos was admitted into evidence without objection as State's exhibit #10.  It depicts a crown tattoo on his lower left arm that is associated with the Early Boys gang.  Red is also the gang's color. (RR p. 32-33)

Arolfo explained the discrepancy between the police report that states the robbery took place at 10:25 am and video which indicates it occurred at 9:28 am to the fact that often videos are "off due to daylight savings times," The gun was never found and he does not know if "forensic" attempted to match the bullet fragment to Hayes' wound or the imprint on the quarter.  According to officer Sneed, Young walked into the store when Ali was showing the video on the "big TV right when you walk" into the store.  She looked up and said, "That's [T.H.], my neighbor."  (RR p. 34-35)

After learning where appellant lived from Young, Sneed went to his residence and spoke with his mother and sister Ironesha.  Arolfo did not know if

6

Sneed tried to lift fingerprints from the counter.[1] Ali was able to readily identify T.H. because a few days earlier because "a few days prior" he and his mother were at the store buying items. He could see appellant's eyes and face. Ionesha told the police on the day of the robbery T.H. grabbed all of his belongings and left the apartment. (RR p. 36-38)

Appellant is 5'9" and is taller than Ali or Hayes. He stole around $300 and Ali told Sneed "I think I know the kid." Ironisha told him she saw T.H. with the gun the morning of the robbery. Appellant's mother said he did not have a red hoodie. The gang division determined that this was a gang related crime. (RR p. 39-40)

Ghulam Ali:

Ali has worked at the store for five years as a cashier. This was the first he was robbed. On April 4, at around 10, 10:30 he was making coffee suddenly someone jumped from the window inside and immediately said twice, "give me the money." The assailant put a gun to Ali' head and instructed him to put the money on the floor then put it into a bag. While he was putting the money in the bag he heard "a big shot with the gun." When all the money was in the bag, the robber took it and fled. (RR, p. 42-44)

---

[1] Sneed's report noted, "I checked the counter looking for prints but found it to be wood. No fingerprints were recovered." (RR p. 40; L. 15-20)

At the time, Ali was confused and not thinking but he saw the robber's face. Part of the eye was covered with red cloth but he saw "the eye and little part below the eye." When he first heard the shot Ali thought he was shot but then he realized somebody was coming inside so he shouted, "go out the door." Then he heard the shot. (RR p. 45 & p. 46; L. 1-7)

Around $450 to $500 was stolen. A week before the incident a lady went to the ATM and a boy was behind her. A young teenage girl was also there. The boy said, "give me the money, Mom, give me the money." The robber said the same thing in "almost" the same voice. Ali gave the video to the police. The day after the robbery, appellant's mother came to the store and told him the police were looking for her son. She did not say anything about what happened but asked for the video. (RR p. 46-48)

Ali recognized appellant's voice and saw his face when he was jumping in. Sometimes before the robbery T.H.'s mother would enter the store. After the robbery she identified herself as his mother. (RR p. 49)

Clarence Hayes:

Hayes lives behind the store and is there everyday. On the morning of April 4th he bought a "Pick 3." Around 10:20 he returned to the store to see if he won. When he walked into the store he could not tell what was happening and he did see

8

Ali. Then he saw a red hoodie rising and was shot. There was only one shot. The bullet struck him in the right thigh area. Fortunately, it hit a quarter in his pocket. When Hayes was hit, he felt traumatized and scared. He backed out of the store and ran on Bellfort where he tried to "flag some help down." State exhibit #9 depicts the injury he sustained to his leg. He sought medical treatment for the injury. (RR p. 52-55)

While Hayes was flagging down help, the robber ran out of the store. He did not have an opportunity to see the guy that shot" him "maybe just his eyes." However, he saw him run through his yard and up the street. Hayes did not see him after that but "they said" he ran into the apartments across from the store. (RR p. 56-57)

Officer Hines:

Andre Hines is an investigator with the Metro Police Department. He investigated a robbery that occurred on April 11, 2013. One of the two suspects was T.H. (RR p. 59-61)

According to the offense report, while riding a metro bus, appellant asked the complainant to use his cell phone. He refused because the battery was low. After he exited the bus, T.H. and another male followed him. Eventually, they assaulted him and stole his phone. The complainant sustained injuries and reported the

9

robbery to the police. (RR p. 62-63 & p. 64; L. 1-12)

The complainant called his phone and received a message that identified the owner as "Early Boy T.H." He also investigated T.H. on social media and was able obtain six photographs that he provided to Hines. On some of them, T.H. is making hand gestures that identify him as a member of the Early Boys gang. As a result of the investigation, appellant was charged with robbery. (RR p. 64; L. 15-25 & p. 65-66)

Probation Officer Gabriel:

Angela Gabriel has been a juvenile probation officer with Harris County since 2007 and works with the gang unit. T.H. placed on probation after being adjudicated for the robbery offense. Gabriel supervised him from March 16, 2015 until his probation terminated the end of May and she met with him several times. (RR p. 68-70)

T.H. is a "high-ranking officer" in the Early Boys gang. There is a safety alert in his probation file because of his violent tendencies. On March 20th Gabriel went to a scheduled visit 8:00 am visit at appellant's home. His mother said he was not there because she allowed him to spend the night at a friend's house. He was supposed to return by 7:00 am. Gabriel reminded her that his curfew is from 7:00 pm to 6:00 am and that he must be residing with her. The mother did not

have a telephone number to contact T.H. Shortly afterwards, he called Gabriel and confirmed his mother allowed him to spend the night at his girlfriend's home. (RR p. 71-73)

On April 6th Gabriel met T.H. at the Greater Grace Outreach Church. She previously spoke to him and his mother about making payments towards the $960 restitution. She informed him that if the restitution was not taken care of he would go before the Judge and he would not get off probation in May. On this day he pulled out a wad of money that "looked like hundreds of bills" and tried to give it to her for restitution. She explained it had to be paid with money order or cashier's check. (RR p. 74-75)

Neither T.H. nor his mother explained where the money came from. Gabriel was not "aware" that he had a job and the meeting occurred just two days after the store robbery. As far as Gabriel knows, the restitution was never paid. (RR p. 75; L. 22-25 & p. 76)

T.H.'s prior probation office, Anthony Chambers, had to go to his school because of an incident that occurred on March 3, 2015. Appellant was jumped by a rival gang member and "was defending himself." The school was placed on lockdown because they feared there would be "gang retaliation at the school." Chambers allowed T.H. to call "someone." He told that person "they were not

11

going to handle this at school. Let's just leave it alone." It is Gabriel's understanding that because T.H. is a high-ranking officer he had the "authority of what the gang would plan out." (RR p. 77-79)

Gabriel does not know who makes the "high-ranking designations" or what criteria are used. In fact, she only knows about it because it "shows up on JIMS." Gabriel drug tested T.H. and he was always negative. Drugs do not appear to be a problem. (RR p. 80-81)

Respondent's Mother:

Nakitta Burrell is appellant's mother. She prefers that her son stay in the juvenile system because he is "still a child, and I don't feel that he's ready for [an adult facility]." Burrell believes T.H.'s placement at several different juvenile facilities "were of benefit to him." She would like him to be sent to a new juvenile placement. (RR p. 82-83)

T.H. stayed in "maybe two or three" placements where he received different kinds of services. He would also go from one placement to another without necessarily being sent home. Burrell is very close to her son and she reported that he is easily angered. However, his anger was not so extreme that it couldn't be controlled. Appellant attended school all the time but mother recalls speaking with Chambers on February 17, 2014 "about [T.H.] not being enrolled in school." He

missed several weeks due to the "enrollment process." In March he left that school and mother began the process of enrolling him into a different school. (RR p. 84-85)

Mother tried to get him an education; keep him away from trouble and teach him right from wrong. In addition to Ironesha who is now 20, she has an 18-year-old daughter Andrea. (RR p. 86; L. 1-15)

On March 27, 2015 T.H. asked Burrell to pick him up so he could arrive home before curfew. She had no transportation so he caught a ride "with a couple of guys." Between 10 or 11 pm she received a call informing her T.H. was arrested for being in a stolen vehicle." They said he had nothing to do with it and was just a passenger. Appellant was aware the vehicle was stolen "once he was told." (RR p. 86; L. 16-25 & p. 87)

After hearing closing arguments, the trial court stated it would not hold it against appellant because he exercised his right to decline participating in the evaluation. It then went on to find the State met its burden as to probable cause. It further noted that criminal proceedings were required due to the serious and life-threatening nature of the offense; four years of escalating criminal behavior even with T.H. being in various placements for over half that time; highly sophisticated high-level gang involvement; lack of response to years of intervention; inadequate

13

parental supervision and his age.

## SUMMARY OF ARGUMENT

After thoroughly reviewing the appellate record, the undersigned court-appointed counsel ("counsel") has determined, in his professional opinion, that there are no non-frivolous grounds to assert on appeal. *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396 (1967) The *Anders* procedures are applicable to juvenile delinquency appeals. *In re D.A.S.*, 973 S.W.2d 296 (Tex. 1998)

Last year the Court of Criminal Appeals enunciated a two-prong analysis to determine if the juvenile court abused its discretion in waiving its jurisdiction and transferring a case to the criminal district court:

(1) did the [juvenile] court have sufficient information upon which to exercise its discretion; and (2) did the [juvenile] court err in its application of discretion? A traditional sufficiency of the evidence review helps answer the first question, and we look to whether the [juvenile] court acted without reference to any guiding rules or principles to answer the second.

*Moon v. State*, 451 S.W.3d 28, 47 (Tex. Crim. App. 2014)

The record in this appeal contains sufficient evidence upon which the court could exercise its discretion. At the certification hearing, both complainants testified and the store video depicting the actual commission of the aggravated robbery was admitted into evidence. The CRIS enumerated appellant's criminal history beginning with a referral for a class B misdemeanor in 2013 and ending

14

with his referral for the first-degree felony offense of aggravated robbery. The seriousness of his criminal behavior escalated despite the Juvenile Probation Department's attempts to rehabilitate him. These attempts included placement at four different facilities and enrollment in specialized programs such as the gang program.

Finally, as required by *Moon*, *Id*. at 51, the juvenile court made "case-specific finding of fact" that are substantiated by the record.

In conclusion, counsel is unable to raise any non-frivolous points to argue on appeal.

## I. *Anders* Procedures & Requirements

When appointed counsel determines, in their professional opinion, that an appeal is without merit and there are no arguable grounds for reversal, counsel is required to file a brief that meets the requirements of *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1386 (1967) The *Anders* procedures are applicable to juvenile delinquency appeals. *In re D.A.S.*, 973 S.W. 2d at 296

The court of appeals is required to fully examine the record to determine whether there are any non-frivolous issues to assert on appeal. If it determines, after conducting its independent review of the record, that an appeal is wholly frivolous, it issues an opinion explaining that it has thoroughly reviewed the record

and finds no arguable issue. However, if the court determines that there are arguable appellate issues, it remands the case to the trial court with instructions to appoint new counsel to argue those issues on appeal. *Bledsoe v, State*, 178 S.W.3d 824, 826-827 (Tex. Crim. App. 2005)

Appellate counsel is required to send a copy of his brief and the record to appellant. In addition, counsel must advise the client of their right to file a pro se brief and of the applicable appellate deadlines. *Stafford v. State*, 813 S.W.2d 503, 510 (Tex. Crim. App. 1991) Finally, appointed counsel must actively advocate for their client by referring to anything in the record that might arguably support the appeal. *Anders v. California*, 386 U.S. at 744; 87 S. Ct. at 1400

## II. Waiver of Juvenile Jurisdiction

A. Applicable Legal Standard:

§54.02(a)(3) provides that prior to transferring a juvenile to criminal court for prosecution, the juvenile court must find (1) probable cause to believe the juvenile committed the offense alleged in the petition; and (2) the seriousness of the offense alleged, the background of the child, and the welfare of the community require criminal prosecution.

In making its determination the juvenile court must consider the following

16

factors set forth in §54.02(f):

1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against persons;

2) the sophistication and maturity of the child;

3) the record and previous history of the child, and

4) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

At the juvenile court, the State bears the burden of proving by a preponderance of the evidence that waiver is appropriate. *Moon v. State*, 451 S.W.3d at 40-41 (Tex. Crim. App. 2014) If the juvenile court waives jurisdiction, it is required to "state specifically in the order its reasons for waiver and certify its action, including the written order and findings of the court." §54.02(h) The order must also show that the §54.02(f) factors were taken into account in making its determination. *Id*. at 40-42

In *Moon*, *Id*. at 47, the Court of Criminal Appeals explained:

In evaluating a juvenile court's decision to waive its jurisdiction, an appellate court should first review a juvenile court's specific findings of fact regarding the Section 54.02(f) factors under "traditional sufficiency o the evidence review." But it should then review the juvenile court's ultimate waiver decision under an abuse of discretion standard.

The Moon court further explain that as long as "the appellate court can

determine that the juvenile court's judgment was based upon facts that are supported by the record, it should refrain from interfering with that judgment." *Id*. at 46

B. Analysis Under §54.02(f)

*Whether Alleged Offense Against Person or Property*:

Here the juvenile court found there was probable cause to believe appellant committed multiple offense against the person of another. Specifically, it found he pointed a firearm at Ali' head placing him in imminent fear of death or serious bodily injury and while in the course of committing the offense shot Hayes in the leg causing him injury. (CR 9)

The record contains ample evidence to support these finding. To cite just the most damaging facts; Ali recognized appellant's face and his voice; his neighbor Young recognized him in the video that shows him committing the offense; Young saw him earlier that morning in the same clothes; and, Ironesha saw him earlier at their home wearing the same clothes twirling a gun.

*Sophistication and Maturity of the Child*:

In support of this factor, the court found appellant was acting alone when he committed the aggravated robbery and "making his own decisions." He is "highly sophisticated, high-level gang involvement in the Early Boys gang" and as such he

makes decisions on what's going to happen and what's not going to happen." He is 17 years old.[2] (CR 9)

All the evidence reflects that T.H. committed the offense alone. The evidence regarding his gang involvement came from Gabriel and the CRIS (State # 6) prepared by the Juvenile Probation Dept. Yet Gabriel's understanding of appellant's rank and authority in the gang was for the most part based how he is described in "JIMS." She was not even his probation officer when a rival gang member at school attacked him. In contrast to Gabriel's sketchy, second hand account of the incident, Chambers wrote in the CRIS that T.H. made two phone calls lasting "about seven minutes collectively then stated, "OK Mr. Chambers, it won't happen at the school." This incident reveals that even if T.H. were not a high-ranking officer in the Early Boys gang, he wielded sufficient influence to convince those that did not to retaliate at school. It also reveals he was sophisticated enough to realized that he would be blamed if it did occur on school grounds.

In sum, a preponderance of the evidence supports the juvenile court's finding on these factors.

---

[2] A child is defined in the Juvenile Justice Code as "any person . . . ten years of age or older and under 17 years of age." §51.02(2)(a) Thus, when the alleged offenses occurred the juvenile court would retain jurisdiction over T.H. for only two months longer, placing him at the older end of the juvenile spectrum.

*Record and Previous History of the Child*:

The third factor to consider is "the record and previous history of the child." On January 22, 2013 T.H. was adjudicated for the misdemeanor offenses of theft and assault-bodily injury. He received a one-year probation. On May 16, 2013 he was adjudicated for the felony offense of robbery; received an 18-month probation; and was placed in the custody of the Chief Juvenile Probation Officer ("CJPO").

During his first CJPO stay he was placed at Harris County Leadership Academy from May 21, 2013 to August 5, 2013 and subsequently at the Hector Garza Center from August 16, 2013 to December 16, 2013. On December 9, 2013 custody was changed to Burrell. However, due to violations of the rules of probation, T.H. was again placed in CJPO custody on May 29, 2014. During this stay he was placed at Gulf Coast Trade Center from June 12, 2014 to July 1, 2014 and then at Hays County Juvenile Center from July 17, 2014. CRIS (State # 6)

In its findings under this factor the court also noted that appellant was placed "on two specialized supervision programs, including, the Intensive Supervision Program from January 22, 2013 to May 1, 2013, and the Gang Supervision Program from December 16, 2014 to May 29, 2014 and again February 9, 2015 to present." Finally, it was noted that T.H. had five disciplinary write-ups while detained at the Harris County Juvenile Detention Center. (CR 10)

20

The court's findings are well grounded in the record. T.H.'s history shows that he continued to commit ever more serious offenses even while on probation. The juvenile system made serious attempts to rehabilitate him by placement at four specialized units, including three that were out of county, and enrolling him in specialized programs such as the Gang Supervision Program.

*Adequate Protection of the Public and Likelihood of Rehabilitation*:

The fourth factor to consider is "the prospect of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court."

The court found the evidence supported discretionary transfer after considering the likelihood that T.H. could be rehabilitated by "use of the procedures, services, and facilities currently available to the Juvenile Court;" the rehabilitative services provided under Title III of the Texas Family Code; and the age restrictions mandated by the Texas Human Resources Code.

The court then proceeded to make case-specific findings in support of the discretionary transfer. T.H. is currently 17 years old leaving insufficient time to rehabilitate him because with an indeterminate sentence he can only placed on probation until his 18th birthday (see §54.04(1)) and he could only be incarcerated in the Texas Department of Juvenile Justice until his 19th birthday. (see

21

§54.04(d)(2) & §245.151 Tex. Hum. Resources Code)[3]

The court further found that all prior attempts to rehabilitate appellant were unsuccessful and his "criminal behavior escalated to the more serious offense of aggravated robbery." Finally, the crimes that T.H. is alleged to have committed are so egregious and aggravated combined with his prior criminal history establishes he is not amenable "to this Court's additional efforts to rehabilitate him." (CR 11)

Again there is ample evidence in the record to support the court's findings under this factor.

## C. Sufficiency of the Evidence to Support the Findings:

Not only must the record substantiate the juvenile court's findings, but also the juvenile court must make "case-specific findings of fact" with respect to the 54.02(f) factors. *Moon*, 451 S.W.3d at 51  In the instant case the court made such findings under each 54.02(f) factor. Moreover, the evidence to support each finding is found in the record.

Based on counsel's review of the record, including the juvenile court's findings of fact, he concludes that the juvenile court provided "a sure-footed and definite basis from which an appellate court can determine that its decision was in

---

[3] The court also noted that the prosecutor chose not to file a determinate petition and seek grand jury approval.  §53.045(a)

22

fact appropriately guided by statutory criteria, principled, and reasonable." *Id*. at 49; *cf. Guerrero v. State*, No. 14-13-00101-CR, 2014 WL 7345987, at *3 (Tex. App. – Houston [14th Dist.] Dec. 23, 2014, no pet.)(memo.op.)(concluding the trial court's order was deficient under *Moon*)

## III. Conclusion & Prayer

Based on counsel's professional evaluation of the record there are no arguable grounds for appeal and T.H's appeal is wholly frivolous. Counsel certifies to the Court that contemporaneously with filing this brief, he is filing a motion to withdraw. He is also forwarding to appellant and his mother, by certified and first class mail, at their last known addresses, a copy of this brief, motion to withdraw and a letter informing them that T.H. has a right to file a pro se response with this Court within 30 days. Counsel also informed them that if this Court concludes after independently reviewing the record that an appeal is wholly frivolous then he may challenge that holding by filing a petition for review in the Texas Supreme Court.

Counsel prays that he be permitted to withdraw.

Respectfully submitted,

/s/ William M. Thursland

_____
William M. Thursland
TBN: 20016200

23

440 Louisiana St., Ste. 1130
Houston, Texas 77002
(713) 655-0200; Fax: (713) 655-9035
Email: wmthursland@hotmail.com

Attorney for Appellant, T.H.

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing computer generated brief complies with word limit requirements of TRAP 9.4 (3). Relying on the word count of the computer program used to prepare this document, the number of words, is 5,019 excluding the caption, identify of parties and counsel, table of contents, index of authorities, statement of the case, statement of issues presented, statement of procedural history, signature, proof of service, certificate of compliance and appendix.

/s/ william m thursland

_____
William M. Thursland

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of appellant's brief was served in accordance with TRAP on December 31, 2015 on:

(1) Alan Curry, assistant district attorney, 1201 Franklin, Houston, TX 77002, by electronic delivery;

(2) T.M., appellant, Juvenile Justice Center, 1200 Congress, Houston, TX 77002 by certified and U.S. First Class mail;

(3) Appellant's mother, Ms. Nakitta Burrell, at her last known address, 7035

24

Bellfort, #201, Houston, TX 77083 by certified and First Class mail.

/s/ william m. thursland

_____

William M. Thursland