

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-19-00081-CV

_____

**IN THE INTEREST OF A.C., AKA A.A., A CHILD**

On Appeal from County Court at Law Number 2
Potter County, Texas
Trial Court No. 89,857-2-FM; Honorable Carry Baker, Presiding

June 27, 2019

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE, and PARKER, JJ.

Appellant, S.A., appeals from the trial court's order terminating her parental rights to her daughter, A.C. aka A.A.[1]  By the trial court's order, A.C.'s father, C.C., was appointed permanent managing conservator and the Texas Department of Family and

---

[1] To protect the privacy of the parties, we refer to them by their initials.  *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2018).  *See also* TEX. R. APP. P. 9.8(b).  S.A. has a younger child that is not a party to the underlying suit.

Protective Services was dismissed from the case. In presenting this appeal, appointed counsel has filed an *Anders*[2] brief in support of a motion to withdraw. We affirm.

**BACKGROUND**

The family has a history with the Department dating back to 2012 when S.A. was suspected of physically abusing A.C. as an infant. Other allegations over the years included S.A.'s methamphetamine use, physical abuse, medical neglect, and neglectful supervision. In March 2017, S.A. was placed on deferred adjudication community supervision for a term of two years for possession of a controlled substance.

In April 2017, when A.C. was living with C.C., allegations of "overly physical" corporal punishment by him were reported to the Department.[3] A.C. was removed from his care and the court ordered that A.C. be placed with S.A., who was then living with her own grandmother. The grandmother's home was clean and drug-free. However, S.A. began using methamphetamine, had a falling out with her grandmother, and eventually moved in with her mother. At the time, S.A.'s brother was also living at the mother's home.

According to S.A., while she was at work, her children stayed in daycare. On one occasion, however, she had to leave her children in her mother's care. S.A. was subsequently notified at work that her brother was accused of molesting A.C. The Department removed A.C. and her younger sibling from S.A.'s custody when she

---

[2] *Anders v. California*, 386 U. S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

[3] C.C. pleaded guilty to injury to a child in February 2018, and he was placed on deferred adjudication community supervision for four years.

admitted to having relapsed in her drug use at that time. As a part of her service plan, S.A. was ordered to complete a substance abuse program.

After she was released from that program, she was sober for six months before relapsing again by using methamphetamine. This time, the Department moved to proceed to an adjudication of guilt on her possession of controlled substance community supervision. In exchange for her plea of true, the trial court extended the period of her community supervision for an additional year and ordered that the terms of her supervision be amended to include treatment in a Substance Abuse Felony Punishment Facility (SAFPF), a secure lock-up facility.

According to the caseworker, the Department expressed concern about whether S.A. could protect A.C. given that she knew her brother was a drug addict whom she knowingly allowed to be around her children. Over objection, the caseworker testified that A.C. had made an outcry to her that her uncle had molested her while they were living in her grandmother's home. When the children were removed based on A.C.'s outcry, the Department found no appropriate caregivers and A.C. was placed in a foster home in Lubbock. Based on the most recent allegations, the Department generated revised family service plans for both S.A. and C.C.

C.C. completed his services and cooperated with the Department. He had recently married, and his wife wanted to adopt A.C. The court ordered that A.C. live with her father pursuant to a monitored return. The caseworker visited the home weekly to observe A.C. and he reported that she was happy living with her father and new stepmother.

3

Given the prolonged history of the case and the goal of permanency for the child, the Department proceeded to terminate S.A.'s parental rights while leaving C.C.'s rights intact. During the final hearing, the caseworker testified that despite knowing about her brother's drug use and the allegations of sexual abuse, she knowingly left her children in his care and possession anyway.

The caseworker further testified that during the course of the case, C.C. had matured, completed all his services, was promoted at his job, and had married. He had improved as a parent and was emotionally supportive to A.C. He described A.C. as having "blossomed." Her behavior had improved, and she was making good grades, participating in activities, and was enjoying being "a normal child." Based on the caseworker's observations of A.C. with her father and stepmother, he opined A.C. was "very bonded" and "warm" and that their household was a "normal family situation."

In contrast, there was testimony by the caseworker that visits and contact between A.C. and her mother caused A.C. long-term stress and trauma. No-shows for visits by S.A. also upset A.C. Based upon all of these factors, the caseworker recommended that S.A.'s parental rights be terminated and that C.C. be named permanent managing conservator. He further opined, that termination of S.A.'s parental rights would be in A.C.'s best interest.

S.A. testified that she did not complete all of her services and she admitted that her periods of sobriety were sporadic. Although she did testify that she had been sober

for 227 days at the time of the final hearing,[4] the court expressed concern over her long history of substance abuse and her inability to refrain from using methamphetamine. S.A. did not ask the court to return A.C. to her custody; rather, she wanted simply to be appointed as her possessory conservator.

During cross-examination, S.A. admitted that it could be as long as one year before she completes in-patient care at another facility. When asked about being reintroduced into A.C.'s life after that period, S.A. acknowledged that it would probably have a negative impact on A.C.'s mental health.

At the conclusion of the hearing, the trial court found that the Department established by clear and convincing evidence that S.A. (1) engaged in conduct or knowingly allowed the child to remain in conditions or surroundings which endangered her physical or emotional well-being; (2) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child; and (3) used a controlled substance, as defined by chapter 481 of the Texas Health and Safety Code, in a manner that endangered the health or safety of the child. TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (O), and (P) (West Supp. 2018). The trial court also found that termination of S.A.'s parental rights was in A.C.'s best interest. TEX. FAM. CODE ANN. § 161.001(b)(2) (West Supp. 2018).

---

[4] Her period of sobriety was at a time when she was confined at a Substance Abuse Felony Punishment Facility.

**APPLICABLE LAW**

The Texas Family Code permits a court to terminate the parent-child relationship if the Department establishes one or more acts or omissions enumerated under section 161.001(b)(1) and that termination of that relationship is in the child's best interest. *See* § 161.001(b)(1), (2) (West Supp. 2018). *See also In re N.G.*, No. 18-0508, 2019 Tex. LEXIS 465, at *1 (Tex. May 17, 2019) (per curiam); *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976). In parental termination cases, due process mandates that the Department establish its case by clear and convincing evidence. § 161.206(a) (West Supp. 2018). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007 (West 2014).

In reviewing a termination proceeding, the standard for sufficiency of the evidence is that discussed in *In re K.M.L.*, 443 S.W.3d 101, 112-13 (Tex. 2014). In reviewing a best interest finding, appellate courts consider, among other evidence, the factors set forth in *Holley*, 544 S.W.2d at 371-72.

**ANDERS V. CALIFORNIA**

The procedures set forth in *Anders v. California* pertaining to a non-meritorious appeal of a criminal conviction are applicable to the appeal of an order terminating parental rights. *See In re A.W.T.*, 61 S.W.3d 87, 88 (Tex. App.—Amarillo 2001, no pet.). The brief filed in this appeal meets the requirements of *Anders* by presenting a professional evaluation of the record and demonstrating why there are no arguable grounds for reversal of the trial court's termination order.

6

In support of his motion to withdraw, counsel certifies he has conducted a conscientious examination of the record, and in his opinion, the record reflects no potentially plausible basis to support an appeal. *In re D.A.S.*, 973 S.W.2d 296, 297 (Tex. 1998). Counsel has demonstrated that he has complied with the requirements of *Anders* by (1) providing a copy of the brief to S.A. and (2) notifying S.A. of her right to file a *pro se* response if she desired to do so. *Id.* By letter, this court also granted S.A. an opportunity to exercise her right to file a response to counsel's brief, should she be so inclined. S.A. did not file a response. The Department notified this court it would not file a response unless specifically requested to do so. No such request was made.

### ANALYSIS

As in a criminal case, we have independently examined the entire record to determine whether there are any non-frivolous issues that might support the appeal. *See Penson v. Ohio*, 488 U.S. 75, 82-83, 109 S. Ct. 346, 102 L. Ed. 2d 300 (1988); *Stafford v. State*, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991). In particular, in light of the recent decision in *In re N.G.*, 2019 Tex. LEXIS 465, we have reviewed each ground relied upon by the trial court, and, with the exception of the ground identified as subparagraph O,[5] we have found those grounds to be sufficient.

---

[5] In our review, we did not consider section 161.001(b)(1)(O) to be a sufficient ground for termination of S.A.'s parental rights. There is no court order in the record establishing the actions necessary for the parent to obtain the return of the child. Admission into evidence of a family service plan is not the equivalent of a court order. Additionally, this court recently held that fluid language contained in other temporary orders is insufficient to meet the requirements to terminate parental rights under subparagraph O. *See In re C.R.*, 07-19-00009-CV, 2019 Tex. App. LEXIS 3082, at *15 (Tex. App.—Amarillo April 16, 2019, no pet. h.) (mem. op.) (noting that until the Legislature specifies otherwise, this court will continue to require a *court order that specifically* establishes the actions necessary for the parent to obtain the return of the child). *See also In re N.G.*, No. 18-0508, 2019 Tex. App. LEXIS 465, at *18 (Tex. May 17, 2019) (concluding that an appellate court must review the *specificity* of a trial court order when evaluating termination of parental rights under section 161.001(b)(O)).

Based on this record, we conclude that a reasonable fact finder could have formed a firm belief or conviction that grounds for termination existed and that termination of S.A.'s parental rights was in her child's best interest. *See* § 161.001(b)(1) (D), and (P), (2) (West Supp. 2018). *See also Gainous v. State*, 436 S.W.2d 137-38 (Tex. Crim. App. 1969). Having reviewed the entire record, we agree with counsel that there are no plausible grounds for appeal.

CONCLUSION

We affirm the trial court's order terminating S.A.'s parental rights.[6]

Patrick A. Pirtle
Justice

---

[6] A motion to withdraw filed in the court of appeals pursuant to *Anders v. California*, in the absence of additional grounds for withdrawal, may be premature. *See In re P.M.*, 520 S.W.3d 24, 27 (Tex. 2016) (per curiam). Courts have a duty to see that withdrawal of counsel will not result in prejudice to the client. *Id.* In light of *In re P.M.*, we call counsel's attention to the continuing duty of representation through the exhaustion of proceedings, which may include the filing of a petition for review in the Texas Supreme Court. Counsel has filed a motion to withdraw on which we take no action.